[Civ. No. 3201. Second Appellate District, Division Two.—May 27, 1920.]

## F. W. HUNT, Appellant, v. A. GLASSELL, Respondent.

[1] NEGOTIABLE INSTRUMENTS—ASSIGNMENT BEFORE MATURITY AS COLLATERAL SECURITY—CONSIDERATION—DEFENSES.—An assignment of a negotiable instrument before maturity as collateral security for a pre-existing debt constitutes an indorsement for a valuable consideration sufficient to protect the purchaser thereof under the law-merchant against defenses to the note of which he has no notice at the time of the indorsement.

[2] ID.—INDORSEMENT AFTER MATURITY—DEFENSES AVAILABLE.—The maker of a note sued on by an indorsee after maturity may prove anything in defense which goes to destroy or satisfy the note,—anything that denies its validity, or that constitutes a bar to an action upon it, as distinguished from anything which constitutes an admission or affirmance of the plaintiff's right of action and his title to the money he seeks to recover, but which seeks to defeat the recovery by establishing liability on his part. Within this class of defenses are fraud, mistake, want or failure of consideration, release, or anything else which goes to show that he ought never be compelled to pay the note to the person to whom it was originally given, or to any person who had held it after maturity, and before it came into the hands of the plaintiff.

[3] ID.—SALE BY BANKRUPTCY COURT — WANT OF POSSESSION — DEFENSES OF MAKER.—A bankruptcy court possesses no such power that it can, by a pretended sale of a purported right to a promissory note which it had never possessed, actually or constructively, and which was settled in full, surrendered, canceled, and destroyed several months before the payee named therein had been adjudged a bankrupt, deprive the maker thereof of such defenses thereto as he might interpose at the time it was so delivered as such collateral security.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Murphey & Poplin for Appellant.

J. E. Hannon and J. Vincent Hannon for Respondent.

THOMAS, J.—This is an action brought to recover judgment against the defendant on a promissory note alleged to

have been made, executed, and delivered by the defendant on the twenty-fifth day of September, 1907, to the Duquesne Brewing Company, a corporation, for the sum of ten thousand dollars, subsequently delivered as collateral security to the Fidelity Investment Company, and by further transfers, hereinafter set forth, eventually becoming the purported property of this plaintiff.

In this, as in all cases, our first query is not, "Is there error in the record?" but, rather, "Is there prejudicial error?" or "Is the judgment just?" In quest for the correct answer to the latter inquiry, it will be necessary, we think, to set forth briefly a statement of the case, as disclosed by the record.

It first appears that on September 25, 1907, this defendant, as the result of certain representations made to him by an agent of the Duquesne Brewing Company, a corporation—the payee named in the note hereinafter referred to—executed and delivered to said brewing company a certain subscription for two hundred shares of stock in said corporation, which subscription reads as follows, to wit: "I, the undersigned, hereby subscribe for 200 shares of the capital stock of the Duquesne Brewing Company, par value $50.00, amounting to ten thousand dollars, payable as follows, to wit: August 1st, 1908. Witness my hand and seal this 25th day of September, 1907. Andrew Glassell (Seal)"; and at the same time and place, as a part of the same transaction, and as further evidence of the promise and agreement to pay for such shares, but not as payment therefor, the defendant also executed the note sued on here, which note is in words and figures as follows: "$10,000.00. September 25, 1907. Ten months after date I promise to pay to the order of Duquesne Brewing Company ten thousand dollars. This note is negotiable and payable without any relief or benefit whatever, from stay, valuations, appraisements or homestead exemption laws. Due August 1, 1908. Andrew Glassell."

Briefly stated, the representations so made to induce defendant to execute the subscription and the note were as follows: That said brewing company was about to erect, in the city of Los Angeles, a brewery of large capacity, and engage in the business of conducting such brewery in said city; that it owned the land upon which such brewery was to be erected, and that it had money enough on hand to erect

and to put the brewery in operation; that the buildings would be completed and the brewery in operation by August 1, 1908; and that if defendant did subscribe for such two hundred shares he would not be required or called upon to pay said subscription, or to accept such stock, prior to the completion of said brewery and the commencement of the operation thereof. That each and every one of said statements was false, and known by said brewery company to be false, for the reason that such company did not own the land referred to, or have sufficient funds on hand with which to complete the brewery or to put the same in operation.

We are next met with the fact that the shares of stock so subscribed for were never issued or delivered to defendant, or to anyone else for him; that before the expiration of the time within which the money was, by the terms of the subscription and note, to be paid and said stock delivered, the said brewing company had wholly abandoned the intention to erect such brewery or to engage in the business of manufacturing or selling the products thereof, and had wholly abandoned the purposes for which said subscription to its capital stock was made; and that it had been, at all times mentioned, unable to erect such brewery or to carry out the purposes or intention for which said subscription was obtained, or to engage in the business as already set forth.

In addition to said alleged fraud, one of the defenses made by defendant here was that there was no consideration for the subscription referred to, or for the note which is the basis of this action.

Some time between "some time in the year 1909" and prior to the twenty-fourth day of June, 1909, the said Duquesne Brewing Company, being indebted to the Fidelity Investment Company in the sum of about two thousand five hundred dollars, as evidenced by a promissory note payable to and negotiated by one Martel to the latter company, delivered the note sued on here to said investment company as collateral security to secure the payment of such indebtedness. Thereafter, and on the twenty-fourth day of June, 1909, such indebtedness being past due and unpaid, the said Fidelity Investment Company brought suit on the ten thousand dollar collateral security note; and while such suit was pending, and prior to the tenth day of May, 1910, the plaintiff in that action sold and transferred the said two thousand five hun-

dred dollar note—the transaction carrying with it the note here involved and so held as collateral security—to one Hugh Glassell, the latter conducting and continuing the suit so commenced in the name of his assignor, the Fidelity Investment Company. On or about May, 10, 1910, this defendant, believing that said Hugh Glassell was an innocent holder of said note for value, paid to him something more than two thousand five hundred dollars, in full payment and discharge of the said ten thousand dollar note for cancellation, and it was thereupon destroyed. On October 5, 1909, the Duquesne Brewing Company was, in accordance with the federal bankruptcy law, adjudged a bankrupt, a trustee of the estate of the bankrupt was duly appointed, and, by the referee to whom the matter was referred, authorized to sell at public auction the assets of such bankrupt. Thereupon the trustee proceeded as directed to sell the property of the bankrupt estate, which consisted of certain real estate and promissory notes, among which was included the note of defendant upon which this action is based—being designated as "Parcel 3. Andrew Glassell, promissory note for $10,000." On December 19, 1910, seven months and nine days after the payment of said sum by this defendant to said Hugh Glassell, and at least one year, five months, and twenty-five days after the note in controversy was delivered by the Duquesne Brewing Company as collateral security to said Fidelity Investment Company, the note having been so delivered at least three months and eleven days before the adjudication of said brewing company to be a bankrupt, as already set forth, the trustee in bankruptcy was authorized to sell all of said property, which, as we have already shown, purported to include the note in question, notwithstanding the fact—which must now be obvious—that this note was not among the assets of said bankrupt estate at the time the corporation was by the court declared a bankrupt, nor has it been at any time since—it being shown that the company had not possessed it at all since June 24, 1909. Pursuant to said purported order, the trustee in bankruptcy made a purported sale of said note to the plaintiff herein, which purported sale the referee in bankruptcy did thereafter, on January 23, 1911, pretend and purport to confirm. Accordingly, on January 26, 1911, whatever right the said Duquesne Brewing Company, a corporation, bankrupt, had in and to said note was

pretended and purported to be sold and delivered to the plaintiff herein.

Under these facts and conditions plaintiff claims that the judgment so entered should be reversed, and the lower court directed to enter judgment in his favor "as prayed for in his second amended complaint."

The trial court found, among other things, as follows: "It is not true that at the time the defendant made said payment he knew that said note for ten thousand dollars made by him to Duquesne Brewing Company was held by the Fidelity Investment Company as collateral security to secure the payment of the said two thousand five hundred dollar note or notes, or for no other purpose, or knew that the only interest that the Fidelity Investment Company had in said note of ten thousand dollars was to the extent of two thousand five hundred dollars, with interest; nor is it true that said note was at the time of said settlement held by the said Fidelity Investment Company, a corporation, as collateral security or otherwise. . . . The court further finds that the note herein sued on . . . is the same note that was sued on in the original complaint; . . . that said note had been delivered up to be canceled as fully paid and discharged, and had been canceled and destroyed, paid and discharged prior to . . . December 10, 1910." There is evidence to support these findings.

Were this action between the defendant here and the brewing company, there is no question but that on the showing made the defendant would have been entitled to judgment on both grounds, i. e., "fraud" and "no consideration." Is the plaintiff in this action in any better position than the brewing company would have been? We think not.

As we have already seen, the ten thousand dollar note was due by its terms on August 1, 1908. The Fidelity Investment Company became the holder of the note during the year 1909, and prior to June 24th of that year, which was some time after the note had become due. It was, therefore, as a matter of law, received by said investment company, as well as by the latter's successor in interest—Hugh Glassell—subject to any and all defenses which the maker thereof, defendant here, might interpose. (*Risley* v. *Gray,* 98 Cal. 40, [32 Pac. 884]; *James* v. *Yaeger,* 86 Cal. 184, [24 Pac. 1005]; *Braly* v. *Henry,* 71 Cal. 481, [60 Am. Rep. 543, 11 Pac. 385,

12 Pac. 623]; *Folsom* v. *Bartlett,* 2 Cal. 163.)    [1]    The
rule in this state is that an assignment of a negotiable in-
strument *before maturity* as collateral security for a pre-
existing debt constitutes an indorsement for a valuable con-
sideration sufficient to protect the purchaser thereof under
the law-merchant against defenses to the note of which he
has no notice at the time of the indorsement.    (Secs. 3123
and 3124, Civ. Code; *Pezzoni* v. *Greenwell,* 178 Cal. 649,
[174 Pac. 60].)    The record in the case at bar discloses the
fact that the note in question was signed by defendant, made
payable "to the order of Duquesne Brewing Company," and
was negotiable in form.    The court found that said brewery
company did practice the fraud upon defendant and in-
duced him to subscribe for said stock, and that no stock was
ever issued or delivered by said brewery company to de-
fendant—which findings find support in the evidence.    The
court further found that at the time said Fidelity Invest-
ment Company so received the said note it had no notice of
any fraud in the procuring of the note in the first instance,
or of any defense to its validity, except the fact that it was
by its terms several months past due.    It also appears that
no call or assessment upon the stockholders or against the
stock subscribed for was made by the board of directors of
said brewing company at any time, for any amount, nor by
said bankruptcy court or the trustee therein; nor were any
proceedings had to determine what, if any, amount would be
necessary to pay the debts, etc., of the bankrupt corpora-
tion; and that there are no unsatisfied creditors.

[2]    Under such conditions as these, the general rule is
that "the maker of a note sued on by an indorsee after
maturity may prove anything in defense which goes to de-
stroy or satisfy the note,—anything that denies its validity,
or that constitutes a bar to an action upon it, as distinguished
from anything which constitutes an admission or affirmance
of the plaintiff's right of action and his title to the money
he seeks to recover, but which seeks to defeat the recovery by
establishing liability on his part.    Within this class of de-
fenses are fraud, mistake, want or failure of consideration,
release, or anything else which goes to show that he ought
never be compelled to pay the note to the person to whom it
was originally given, or to any person who had held it after
maturity, and before it came into the hands of the plain-

tiff.'' (Note to *Y. M. C. A. Gymnasium Co.* v. *Rockford Nat. Bank* (Ill.), 46 L. R. A. 760.) There is, therefore, no merit in appellant's contention that respondent here is liable as trustee of an involuntary trust.

Appellant urges thirteen points for reversal of the judgment, none of which, however, do we deem it necessary or essential to discuss, for the reason that it is now obvious that the bankruptcy court had absolutely no jurisdiction or control over the note, and that the bankrupt estate had no interest therein that could be so disposed of. **[3]** Under these facts, even a bankruptcy court possesses no such power that it can, by a pretended sale of a purported right to a note which it had never possessed, actually or constructively, and which was settled in full, surrendered, canceled, and destroyed several months before the payee named therein had been adjudged a bankrupt, deprive the maker thereof of such defenses thereto as he might interpose at the time it was so delivered as such collateral security.

We think, regardless of the claim that there is error in the record, finding no prejudicial error therein, that the judgment is eminently just. Particularly is this so when the entire record is viewed in the light of section 4½ of article VI of our constitution; for we cannot say that after an examination of the entire cause, including the evidence, we are of the opinion that the errors complained of have resulted in a miscarriage of justice.

Judgment affirmed.

Finlayson, P. J., and Weller, J., concurred.