[Civ. No. 6674. First Appellate District, Division One.—November 7, 1929.]

HAMBERGER–POLHEMUS COMPANY (a Corporation), Respondent, v. JOHN LEON LEWIN, etc., Appellant.

Philip S. Ehrlich and Albert A. Axelrod for Appellant.

Oliver Dibble for Respondent.

THE COURT.—An appeal by the defendant from a judgment entered in an action to recover the damage due

to his refusal to accept and pay for certain coffee purchased by him. The appeal is presented on the judgment-roll. As grounds therefor it is contended that the title to the coffee passed to the defendant; that after his refusal to accept and pay the agreed price therefor the plaintiff, without complying with the provisions of section 3005 of the Civil Code, resold the coffee in the open market and was consequently entitled to no relief in the action.

The complaint, to which was annexed a written·contract executed by the parties, alleged that, pursuant to the terms thereof, the "plaintiff agreed to sell to defendant 500 bags of Columbian Coffee Aripe brand at the agreed price of 27¼¢ per pound, ex dock San Francisco, net weight actual tare." These allegations were admitted by the answer. The contract also contained the following provisions: "*Quality:* To be based upon Columbian Coffee—Aripe Brand—usual quality. . . . *Payment:* Cash less 2%. Full payment in exchange for delivery order on day after presentation of invoice with weight tags attached. *Terms:* Sale to be absolute and coffee is to be taken by buyer if average grading within one-half (½) cent per pound of the sample or description sold on at the graded allowance. . . . Decision of quality to be final and binding upon both buyer and seller, to be determined by C. E. Bickford & Co." The complaint further alleged that upon the arrival of the coffee in San Francisco the same was examined by C. E. Bickford & Co. and by them determined not to be more than one-half cent per pound below usual quality; that on October 14, 1926, the same was weighed by a public weighmaster and certified to be of the gross weight of 76,691 pounds; that on the same day an invoice of the coffee with the weight tag attached was delivered to the defendant; and on October 16, 1926, a delivery order therefor was tendered, the net weight of the coffee being 75,941 pounds. Demand for the agreed net price, namely, $19,907.94, and a refusal by the defendant to accept the coffee or pay therefor was alleged, and that thereafter, on October 18, 1926, defendant was notified that the plaintiff intended to sell the coffee in the open market and hold him for any damage due to his refusal. It was further alleged that on October 19, 1926, the coffee was sold for the total sum of $18,789.13, from which plaintiff paid a brokerage fee for selling amounting

to $187.89 and the sum of $9.75 for demurrage, and that plaintiff had suffered damage in an amount equal to the difference between the agreed net price and the net amount for which the coffee was sold.

The answer averred that the coffee tendered was between one and one-half and two cents per pound below the usual quality of said Aripe brand at the graded allowance, and also that the decision of C. E. Bickford & Co. as to its quality was due to a mistake on their part and constituted a fraud on the rights of the defendant. According to the findings, which recited that oral and documentary evidence was introduced at the trial by the respective parties, the plaintiff agreed to sell to defendant and defendant agreed to buy from plaintiff the coffee in question. The other findings were in accordance with the allegations of the complaint and against the defenses pleaded by the defendant. Judgment was entered thereon for $1,316.45, with interest.

According to the contract, the sale was to be absolute and the coffee taken by the buyer if the average grading proved to be within one-half cent per pound of the sample or description sold on at the graded allowance, and the determination of the fact by C. E. Bickford & Co. was to be final. Payment therefor in cash, less two per cent, was to be made in exchange for delivery order on the day after the presentation of the invoice with the weight tags attached. The language of the instrument clearly indicates an intention that title should pass when the quality of the coffee was ascertained by Bickford & Co. to be in accordance with the terms of the contract. Under this interpretation the defendant, relying on *Bennett* v. *Potter,* 16 Cal. App. 183 [116 Pac. 681], and *Madison* v. *Weyl-Zuckerman & Co.,* 48 Cal. App. 308 [192 Pac. 110], claims that no recovery could be had. ▮ The rule is well settled that a resale by a vendor whose vendee has repudiated the contract does not work a rescission. (*Tomboy Gold etc. Co.* v. *Marks,* 185 Cal. 336 [197 Pac. 94]; *Phillips* v. *Stark,* 186 Cal. 369 [199 Pac. 509, 511].) In the latter case the court, referring to *Bennett* v. *Potter, supra,* said: "It was a case where a vendor, left with property on his hands, the title to which had passed to the vendee, resold the property, but not in the manner required for the enforcement of a vendor's lien and brought suit for the difference between the contract

price and the amount obtained on the resale . . . the trial court had allowed the plaintiff judgment for the difference between the contract price and the amount realized on the resale. This was reversed on appeal but not on the ground that the plaintiff was not entitled to recover anything. It was reversed on the ground that, since the resale had not been made in the manner prescribed for the enforcement of a vendor's lien, the defendant was not bound by it, that as a result the plaintiff had been guilty of a conversion of the property for which he was liable to the defendant, and that the amount received by the plaintiff on the resale could not be taken as the defendant's measure of damages for this conversion. It is not said in so many words, but the plain implication from the opinion is, that the plaintiff was entitled to recover the contract price offset by the amount of damages done the defendant by the conversion worked by the resale.''

Such, also, was the effect of the decision in *Madison* v. *Weyl-Zuckerman Co., supra*. *Phillips* v. *Stark, supra,* was a case wherein the vendees of personal property, the title to which had vested in them, abandoned the property and refused to pay the price. The vendor retook possession and resold the property, but without giving the notice required by the code for a sale in enforcement of a vendor's lien. (Civ. Code, secs. 3002, 3049.) The court held that the vendor, notwithstanding the above, still had the right to recover in damages for the vendee's breach, and in discussing the measure of damages said: ''The measure provided by section 3310 of the Civil Code, in cases where title has passed to the vendee, is the full purchase price. . . . The vendor may not have both the full purchase price and the property. It is quite immaterial in the present case upon what theory this is worked out, whether upon that suggested by us, that by repudiating the contract and thrusting the property back on the plaintiff, the defendant put him in the situation of a vendor under an executory contract, in which case the measure of damages is the difference between the contract price and the market value of the property (Civil Code, Secs. 3311, 3353), or upon that suggested by *Bennett* v. *Potter, supra,* that the vendee is responsible for the full purchase price under section 3310 of the Civil Code, but the vendor is liable to the vendee in damages for

a conversion. The result is the same in either case, since the measure of damages for a conversion is the market value of the property (Civil Code, Sec. 3337).''

So far as appears from the pleadings or otherwise, the defendant made no claim that the coffee was sold for less than its market value or that he was damaged as the result of the resale. While the complaint did not allege the market value of the property, but only the amount for which it sold on the resale, and the court found in accordance with this allegation, and not as to the ultimate fact of the market value, nevertheless, the amount for which the coffee sold was evidence of its market value (*Phillips* v. *Stark, supra; Meyer* v. *McAllister,* 24 Cal. App. 16 [140 Pac. 42]); and whenever from facts found other facts may be inferred which will support the judgment, such inference will be deemed to have been made. And this rule has a special application where the appeal is upon the judgment-roll (*Breeze* v. *Brooks,* 97 Cal. 72 [22 L. R. A. 257, 31 Pac. 742]; *Anglo-California Trust Co.* v. *Oakland Railways,* 193 Cal. 451 [225 Pac. 452]).

Moreover, it may fairly be inferred from the facts shown by the record that had more complete findings been made they would have been adverse to the defendant, and under such circumstances a failure to find is not a ground for a reversal of the judgment (*Hulen* v. *Stuart,* 191 Cal. 562 [217 Pac. 750]). The findings were sufficient to support the judgment and the record discloses no error which would justify a reversal.

The judgment is affirmed.