[Civ. No. 4524.   Third Appellate District.—June 25, 1932.]

NINO AIMO, Respondent, v. CYNTHIA MITCHELL, as Executrix, etc., Appellant.

William M. Stafford for Appellant.

H. W. McGowan for Respondent.

PLUMMER, Acting P. J.—The plaintiff had judgment against the defendant upon two checks executed and delivered to the plaintiff by James H. Mitchell, now deceased. From this judgment the defendant appeals.

The record shows that on or about the twenty-seventh day of January, 1930, James H. Mitchell, signing his name as "J. H. Mitchell", made, executed and delivered to the plaintiff two checks in the words and figures following, to wit:

"Willows, Cal., Jan. 27th, 1930.

"Bank of Willows. 90–476

"Pay to Nino Aimo or order $566.40/100 Five Hundred Sixty six and 40/100 dollars, for 35.40 tons hay at 16.00 per ton.

"J. H. MITCHELL."

"Willows, Cal., Jan. 27, 1930

"Bank of Willows. 90–476

"Pay to Nino Aimo or order $2000.00/xx Two Thousand ———— Dollars, first payment on 53 head milch cows or heifers at $100 each to be selected.

"J. H. MITCHELL."

The record further shows that James H. Mitchell died testate on or about the thirtieth day of January, 1930, and that the two checks herein referred to were not presented by the plaintiff to the Bank of Willows for payment, prior to the death of James H. Mitchell. After the appointment of the defendant as executrix of the estate of said deceased the checks referred to herein were presented to her for allowance and payment, and allowance and payment were refused. Within the time allowed thereafter, this action was begun.

The answer of the defendant denied the nonpayment of the respective checks, denied the allegations in respect

thereto, and after setting forth the death of James H. Mitchell on the thirtieth day of January, 1930, and alleging the pendency of negotiations relative to the purchase of the cattle mentioned in one of the checks, set forth the following facts as a defense thereto:

"That said defendant avers that after the death of said James H. Mitchell, as aforesaid, said plaintiff took possession of said cattle, and the whole thereof, and during the months of July and October, 1930, said plaintiff sold about twenty-seven (27) head of said dairy cows and received therefor the sum of One Hundred Ten ($110.00) Dollars per head, or the sum of Twenty-Nine Hundred Seventy ($2970.00) Dollars. That said sum of Twenty-Nine Hundred Seventy ($2970.) Dollars so received by said plaintiff for said twenty-seven head of cows was greater than, and in excess of the amount which said plaintiff agreed to accept and was to receive from said James H. Mitchell, deceased, for said twenty-seven (27) head of cows.

"That said defendant avers that after the death of said James H. Mitchell, as aforesaid, and on or about the 8th day of October, 1930, said plaintiff sold the remainder of said dairy cows, to-wit: Twenty-six (26) head, to one Thad Wait, for a sum, which said defendant is informed and believes, and so avers the fact to be, was in excess of the sum said plaintiff agreed to accept and was to receive from said James H. Mitchell, deceased, for said twenty-six head of cows.

"That said defendant avers that said plaintiff, in selling said cattle, as aforesaid, did so as the owner thereof, and that he made, executed and delivered to the respective purchaser, a bill of sale therefor, and that the price which said plaintiff received for all of said cattle was greater than and in excess of the amount which he agreed to accept and was to be paid therefor by said James H. Mitchell, deceased. That by reason of the foregoing, said plaintiff has sustained no damage, and that there is not any sum due, owing and unpaid to said plaintiff on account of said claim set forth in said complaint on file herein."

As a further defense, and by way of cross-complaint, the defendant set up that at the time the plaintiff sold the twenty-six head of cows mentioned in the answer, the plain-

tiff sold twenty-four head of hogs belonging to the estate of James H. Mitchell, deceased, and received therefor the sum of $480, for which sum judgment was prayed against the plaintiff. The answer pleads the facts which we have referred to herein by way of estoppel to the plaintiff's cause of action. The cause was submitted to the court upon an agreed statement of facts, as follows:

"It is hereby stipulated by and between H. W. McGowan, Esq., as attorney for plaintiff above named and Wm. M. Stafford, Esq., as attorney for defendant above named, that the facts hereinafter in this stipulation set forth are true and correct and may be accepted and regarded as admitted facts upon the trial of the above entitled action. 1. That on the 24th day of January, 1930, said plaintiff above named and J. H. Mitchell made and entered into a contract wherein and whereby said plaintiff agreed to sell and said J. H. Mitchell agreed to purchase certain personal property, to-wit: fifty-three (53) head of dairy cows, and that on said 24th day of January, 1930, a bill of sale of said cattle above mentioned was made and executed by said plaintiff above named to said J. H. Mitchell, deceased. That a true and correct copy of said bill of sale is hereto annexed and marked 'Exhibit A', and made a part hereof.

"2. That on the 27th day of January, 1930, said James H. Mitchell, deceased, made, executed and delivered to said plaintiff a check which is in words and figures as follows:

"'Willows, Cal. Jan. 27, 1930.
"'Bank of Willows          90–476
"'Pay to Nino Aimo or order $2000./xx Two Thousand ——— Dollars, First payment on 53 head milch cows or heifers at $100 each, to be selected.
"'J. H. MITCHELL.'

"3. That thereafter and on the 30th day of January, 1930, said James H. Mitchell, also known as J. H. Mitchell, died testate in the County of Glenn, State of California, and that on the 28th day of February, 1930, said defendant was by an order of the above entitled court made and given, appointed the executrix of the estate of said decedent, and that said defendant ever since said day last above men-

tioned has been and now is, the duly appointed, qualified and acting executrix of the estate of said decedent.

"4. That said defendant as the executrix of the estate of said James H. Mitchell, deceased, caused to be published as required by the provisions of section 1490 of the Code of Civil Procedure of the State of California, a notice to creditors of the estate of said decedent. That the time for the presentation of claims against the estate of said decedent, as required by said notice to creditors, expired on the 1st day of September, 1930.

"5. That thereafter and within the time required by the notice to creditors published in the estate of said decedent, said plaintiff filed in the above entitled court in the records of said estate, his verified claim in the sum of two thousand ($2000.00) dollars, based upon said check. That thereafter and on November 1, 1930, said claim was rejected in whole by the defendant above named as executrix of the estate of said decedent.

"6. That after the death of said J. H. Mitchell, as aforesaid, said plaintiff took possession of said cattle described in said bill of sale hereto annexed and marked 'Exhibit A', and that during the month of July, 1930, said plaintiff sold twenty-seven (27) head thereof for the sum of One Hundred Ten ($110.00) Dollars per head, or the sum of Two Thousand Nine Hundred Seventy ($2970.00) Dollars. That thereafter and on or about the 8th day of October, 1930, said plaintiff sold the remainder of said cattle to one Thad Wait. That when said plaintiff resold said cattle in the months of July and October, 1930, as aforesaid, he did so as the sole and exclusive owner thereof, and made, executed and delivered a bill of sale therefor to the purchasers thereof.

"7. That at the time of the death of said James H. Mitchell, as aforesaid, he was the owner of, and entitled to the possession of twenty-four (24) head of hogs, together with the increase thereof, which were at said time situated on the ranch of said plaintiff at Stonyford, Glenn County, California. That said hogs were of the value of four hundred eighty ($480.00) dollars, and were so appraised by the Inheritance Tax Appraiser of the estate of said decedent.

"8. That on the 8th day of October, 1930, when said

plaintiff sold said dairy cows as above stipulated, he also, and at the same time sold said twenty-four (24) head of hogs, together with the increase thereof, to said Thad Wait, and that at said time said hogs were the property of, and belonged to the estate of said James H. Mitchell, deceased. That said plaintiff had never been authorized or empowered to sell said hogs, by said defendant as executrix of the estate of said decedent, or by anyone acting for and on her behalf. That said plaintiff has never made or rendered any account to said defendant as executrix of the estate of said decedent, or of the proceeds of said sale, nor has he paid to said defendant, as such executrix, the money realized from the sale of said hogs.

"9. That on or about the 27th day of January, 1930, said James H. Mitchell, deceased, purchased thirty-four (34) tons of hay from said plaintiff, and which hay was at said time on the ranch of said plaintiff at Stonyford, California.

"10. That on said 27th day of January, 1930, said James H. Mitchell, deceased, made, executed and delivered to said plaintiff a check, which is in the words and figures as follows:

"'Willows, Cal. Jan. 27th, 1930.

"'Bank of Willows          90–476.

"'Pay to Nino Aimo, or order, 566 40/100 Five hundred sixty-six and 40/100 dollars for 35.40 tons hay at 16.00 pr. ton.

"'J. H. Mitchell.'

"11. That thereafter, and within the time required by the notice to creditors published in the estate of said decedent, said plaintiff filed in the above entitled court in the records of said estate, his verified claim in the sum of five hundred sixty-six and 40/100 ($566.40) dollars, based upon said check. That thereafter, and on November 1, 1930, said claim was rejected in whole by the defendant above named, as executrix of the estate of said decedent.

"12. That said thirty-four (34) tons of hay were never removed from said ranch of said plaintiff at Stonyford, California, but remained thereon and were fed and given to said fifty-three head of cattle, hereinabove referred to, and which said plaintiff sold as hereinabove stipulated and

agreed, as well as other cattle and livestock owned by plaintiff on said ranch.

"Dated, February, 1931.

> "H. W. McGowan,
> "Attorney for Plaintiff,
> "Wm. M. Stafford,
> "Attorney for Defendant."

In addition to the foregoing it was agreed that the checks had never been paid.

The question presented to this court for determination is whether the circumstances detailed in the agreed statement of facts constituted a discharge of the obligation evidenced by the two checks. Each check contained a statement of the purposes for which it was drawn and a reference to its being a part of the purchase price of the property involved in the negotiations between the plaintiff and James H. Mitchell.

On the part of the appellant it is contended that under the circumstances, no action lies for the purchase price of the property referred to, and that the only cause of action would be for the difference between what the plaintiff realized on the subsequent sale, and the price agreed to be paid by James H. Mitchell. As to the hay, there was no subsequent sale, but the entire quantity thereof was consumed by the plaintiff in feeding it to the cattle involved in the transaction, and also to other cattle owned by the plaintiff.

On the part of the plaintiff it is contended that the checks were negotiable instruments, and the fact that the plaintiff had taken possession of the property involved and resold the same, was wholly immaterial; that it was an action for the purchase price under section 3310 of the Civil Code as it then read (which is now sec. 1783, Civ. Code), and that the only defense possible for the defendant would be payment, lack of capacity of the parties, lack of consideration, failure of consideration, inadequacy of consideration, illegality of consideration, fraud or mistake. In making this contention respondent overlooks subdivision 4 of section 3200 of the Civil Code, specifying how a negotiable instrument may be discharged. After specifying that it may be discharged in three different ways, subdivision 4 reads: "By any other act which will discharge a simple contract

for the payment of money." The Negotiable Instruments Law, as found in 8 C. J. 566, relative to discharges, reads as follows: "First: By payment in due course, etc.; Second: By. payment in due course by the party accommodated, etc.; Third: By the intentional cancelation thereof by the holder; Fourth: By any other act which will discharge a simple contract for the payment of money." On page 611 of the same volume we find the following, specifying how negotiable instruments may be discharged, other than by the payment of money, to wit: "Payment is not necessary to discharge a bill or a note, either as to a party secondarily liable or as to a party primarily liable. For instance, a bill or a note may be discharged by the act of the parties by novation, by accord and satisfaction, by compromise and settlement, by release, including a release of a joint-maker, by a discharge in bankruptcy, or insolvency, or in many other ways." Again, on the same page, we find the following: "Parties primarily liable on a bill or a note, such as the makers and acceptors, are discharged, and the instrument is extinguished in general by any act which will discharge any other simple contract for the payment of money, such as payment, release, or the like." The discharge provided for by any act which will discharge a simple contract for the payment of money has been held to apply only as between the maker and the original payee, or an endorsee after maturity. It does not apply to a holder who takes the paper in due course, and without knowledge, etc. To the same effect is the text found in 19 California Jurisprudence, page 922.

It is thus apparent that under the provisions of section 3200 of the Civil Code, and the Negotiable Instruments Law, the checks involved are on the same basis as though they were simple contracts for the sale and purchase of cattle and hay, as upon the face of each instrument specifically appears the purpose for which it is given, and the conclusion is unescapable that if it were a simple contract for the payment of money, any facts and circumstances which show that the plaintiff is not entitled to the recovery of the money would constitute a valid defense.

Here, the record shows that the plaintiff repossessed himself of all of the cattle, and sold the same to other parties. A part of the cattle was sold for an advance over

the price agreed to be paid by James H. Mitchell, deceased. All of the remainder of the cattle were to be sold, but for what price the record does not disclose. If any presumption could be indulged in in relation thereto, it would be that they were sold for the full price agreed to be paid therefor by the deceased, as there is no claim for damages on account of any depreciation in value.

Contending that the title had passed both as to the cattle and as to the hay, it is insisted by the respondent that this action is governed by section 3310 of the Civil Code as it then read, which is as follows: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property the title to which is vested in him, is deemed to be the contract price." This section of the code, however, applies only where the seller has not repossessed himself of the property which constitutes the basis of the transaction, or holds the property for the benefit of the buyer and notifies him of the intended sale. Where the property is repossessed by the seller, and by him subsequently sold, an action lies only for the difference between the amount received upon the resale and the amount agreed to be paid by the first buyer. The construction of this section, as we have stated, is very clearly set forth in the case of *Phillips* v. *Stark*, 186 Cal. 369 [199 Pac. 509], where, on page 374, we find the following: "Before dismissing the cause, however, there are two things which perhaps should be added. The first is in regard to the measure of the damages to which the plaintiff is entitled. The measure provided by section 3310 of the Civil Code, in cases where title has passed to the vendee, is the full purchase price. But this measure, of course, is based upon the assumption that because the title has passed, the property has gone from the vendor and he has nothing but his claim against the vendee without any offsets. But where, as here, although the title has passed, the vendor still retains the property, the value of the property must be offset against the purchase price. The vendor may not have both the full purchase price and the property. It is quite immaterial in the present case upon what theory this is worked out, whether upon that suggested by us that by repudiating the contract and thrusting the property back on the plaintiff, the defendants put him in the situa-

tion of a vendor under an executory contract, in which case the measure of damages is the difference between the contract price and the market value of the property (Civ. Code, secs. 3311, 3353), or upon that suggested by *Bennett* v. *Potter*, 16 Cal. App. 183 [116 Pac. 681], that the vendee is responsible for the full purchase price under section 3310 of the Civil Code, but the vendor·is liable to the vendee in damages for a conversion. The result is the same in either case, since the measure of damages for a conversion is the market value of the property. (Civ. Code, sec. 3337.)''

In *Levy* v. *Kahn*, 59 Cal. App. 119 [210 Pac. 40], we find the following where the court was considering section 3310 of the Civil Code: ''It was also held that section 3310 of the Civil Code, in fixing the measure of damages as the full contract price, where the title had vested in the vendee, did so on the assumption that because the title had passed, the vendor had nothing but his claim against the vendee, without any offsets. 'But where, as here, although the title has passed, the vendor still retains the property, the value of the property must be offset against the purchase price. The vendor may not have both the full purchase price and the property' '', etc.

To the same effect is the case of *Hamberger-Polhemus Co.* v. *Lewin*, 101 Cal. App. 704 [282 Pac. 425]. See, also, *Gopcevic* v. *California Packing Corp.*, 64 Cal. App. 132 [220 Pac. 1078].

It likewise seems self-evident to us that the plaintiff, after feeding the hay for which one of the checks was given, is not entitled to recover the purchase price thereof.

In view of these cases and the agreed statement of facts, we think the following quotation which we take from the case of *Hunt* v. *Glassell*, 47 Cal. App. 774 [191 Pac. 373, 375], applicable: ''Under such conditions as these, the general rule is that 'the maker of a note sued on by an indorsee after maturity may prove anything in defense which goes to destroy or satisfy the note,—anything that denies its validity, or that constitutes a bar to an action upon it, as distinguished from anything which constitutes an admission or affirmance of the plaintiff's right of action and his title to the money he seeks to recover, but which seeks to defeat the recovery by establishing liability on his part.

Within this class of defenses are fraud, mistake, want or failure of consideration, release, or anything else which goes to show that he ought never be compelled to pay the note to the person to whom it was originally given, or to any person who had held it after maturity, and before it came into the hands of the plaintiff.' "

The facts set forth in the agreed statement of facts and under the authorities which we have cited compels the conclusion that the plaintiff is not shown to be entitled to recover for the purchase price under the provisions of section 3310 of the Civil Code, but is entitled to recover, if anything, only such damages as he may have suffered, which damages, not being shown, necessarily leads to a reversal of the judgment so far as it is based upon the two checks. There being no appeal from the judgment awarding the respondent the sum of $480 as the sum of money received by the plaintiff for 24 hogs belonging to the estate of the deceased, it follows that it should be affirmed, with the modification that it cannot be considered as an offset against any claim which the plaintiff may have against the estate of said deceased. To the extent that the judgment so provides, it is reversed, and in so far as the judgment awards the plaintiff recovery upon the two checks mentioned herein, it is also reversed.

Parker, J., *pro tem.*, and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 25, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 22, 1932.