[Civ. No. 8507. First Appellate District, Division Two.—November 21, 1932.]

M. ROBB, Respondent, v. T. J. CARDOZA, Appellant.

M. ROBB, Respondent, v. W. P. MULHERN, Appellant.

M. ROBB, Respondent, v. T. J. CARDOZA, Appellant.

Douglas A. Nye and Vincent Surr for Appellants.

C. H. Sooy for Respondent.

STURTEVANT, J.—As assignee of the Pacific National Bank the plaintiff commenced three separate actions against three different defendants on three different notes. The defendants answered and by consent of the parties the actions were consolidated for trial. The trial court made findings in favor of the plaintiff, and the defendants have appealed. The pleadings were quite full and the findings are long, full

and complete. The defendants' claim that several of the findings in part were not sustained by the evidence. The general facts which involved the parties in this litigation are stated in detail in the decision on a former appeal, *Robb* v. *Cardoza,* 110 Cal. App. 116 [293 Pac. 851], and need not be repeated.

The defendants contend (1) the taking by a creditor from his debtor of a promissory note of a third party given to the debtor as payee is not a taking for value and does not create a *bona fide* holder for value in due course where such note is merely taken as added collateral, where no credit is given upon the indebtedness prior to some payment by said third party, and where said note is infirm as between such third party and said payee, and where no payment is ever made or credit given; (2) in other words, a pre-existing indebtedness is usually a sufficient consideration to constitute a pledge-holder a *bona fide* holder, and it is not so where third party rights exist to be protected by equity; (3) where third party rights are concerned, no one party is allowed to lose while another makes a profit, but justice is done between them all. Such title as the bank has it holds by an estoppel; and the doctrine of estoppel discountenances and denies any and all profit at the expense of innocent third parties; and (4) in no view was the bank a *bona fide* purchaser.

For the sake of brevity we answer the last point first. The bank claimed and the trial court found that the bank held the note sued upon as collateral to secure the payment of another note theretofore delivered to the bank. No question of being a purchaser was involved.

In support of points 1 and 2, the defendants cite and rely on *Bank of Italy* v. *Welbilt Auto Body Co.,* 101 Cal. App. 526 [281 Pac. 1060]; *Pacific Nat. Bank* v. *Corona Nat. Bank,* 113 Cal. App. 366 [298 Pac. 144]; *Pacific Acceptance Corp.* v. *Goodman,* 72 Cal. App. 143 [236 Pac. 964]; *Oppenheimer* v. *Radke & Co.,* 20 Cal. App. 518 [129 Pac. 798]; *Sargent* v. *Sturm,* 23 Cal. 359 [83 Am. Dec. 118]; *Peoples F. & T. Co.* v. *Matthews F. Co.,* 104 Cal. App. 630 [286 Pac. 710]; Civ. Code, sec. 3135. No one of the authorities is in point. On the former appeal (*Robb* v. *Cardoza,* 110 Cal. App. 116), at page 122 [193 Pac. 851, 853]), the court said: "The rule is well settled that the indorsee of a promissory note as security for a pre-existing debt is a holder for value in the

usual course of business (*Payne* v. *Bensley,* 8 Cal. 260 [68 Am. Dec. 318]; *Smitton* v. *McCullough,* 182 Cal. 530 [189 Pac. 686]; *Hunt* v. *Glassell,* 47 Cal. App. 774 [191 Pac. 373]; *Griswold* v. *Morrison,* 53 Cal. App. 93 [200 Pac. 62]; *People's State Bank* v. *Penello,* 59 Cal. App. 174 [210 Pac. 432]; *Williams* v. *Walker,* 66 Cal. App. 672 [226 Pac. 939], and, as held in *Goodale* v. *Thorn,* 199 Cal. 307 [249 Pac. 11], and *Blochmann Commercial etc. Bank* v. *Moretti,* 177 Cal. 256 [170 Pac. 419]). . . . '' An examination of the authorities there cited will disclose that every single case is in point. See, also, *West Rutland Trust Co.* v. *Houston,* 104 Vt. 204 [158 Atl. 69], 80 A. L. R. 664, and exhaustive note attached; see, also, 8 C. J. 488, and exhaustive note.

In support of their third point the defendants cite and rely on *Ramsey* v. *Chilson,* 57 Cal. App. 785 [208 Pac. 319], *Little* v. *Union Oil Co.,* 73 Cal. App. 612 [238 Pac. 1066], *Evans* v. *Marsh & Co., Inc.,* 116 Cal. App. 441 [2 Pac. (2d) 882]; *Martin* v. *Hollins,* 118 Cal. App. 561 [5 Pac. (2d) 899], and Civ. Code, sec. 3135. No one of the authorities is in point. The rights of the plaintiff are defined by section 3138 of the Civil Code.

At the time that the trial court was settling the findings the defendants requested the trial court to make certain additions to its findings, but it refused to do so. The findings so requested were as follows:

''That in all two permits were issued by the Corporation Commissioner for the sale of stock of Big Creek Ranch, Inc., to-wit: an original permit dated December 31, 1925, for the sale of seven shares for cash, and for the sale of 3993 shares in exchange for certain ranch property, subject to certain liabilities, in all 4000 shares; and a supplemental permit dated February 5, 1926, for sale of a further 1000 shares at par with selling expense not to exceed five per cent, etc., and the existence and terms of said permits were at all times known to plaintiff's predecessor herein and to said Hopkinson and to said Big Creek Ranch, Inc.''

'' . . . at said time insufficiently secured and the said Big Creek Ranch, Inc., and said Hopkinson both then and ever since being insolvent and owning no property other than that hypothecated to said bank. That neither at the time of receiving said added collateral security, nor ever, was any credit entered reducing said indebtedness of Big Creek

Ranch, Inc., nor of said Hopkinson nor was any credit intended or contemplated by said bank to be entered reducing said indebtedness unless, and until, and only in such amount as might be, eventually, collected from defendant herein, and no amount has yet been collected from the note of said defendant, nor at all credited upon said indebtedness of Big Creek Ranch, Inc., or of said Hopkinson, to said bank.'' There are two reasons, each of which is sufficient, why the trial court did not err. The findings so requested were not responsive to any allegations contained in the pleadings. In the second place the finding first set forth merely tended to show that as between the maker and the payee of the note there may have been a defense; however, as to this plaintiff and his assignor, the subject matter was immaterial. The second request was based on the theory that the Pacific National Bank should have made some entries showing payment or credits. The trial court made findings that the bank received the notes as collateral. ■ When such instruments are taken as collateral to secure the payment of a preexisting debt the question whether there should be a further showing before the holder could be said to be a holder for value was formerly debatable. The federal courts and the state courts were in conflict. (7 Cyc. 932–935.) The adoption of the Uniform Negotiable Instruments Act put these questions to rest. In *Brooklyn City & N. R. R. Co.* v. *National Bank,* 102 U. S. 14, at page 28 [26 L. Ed. 61], the court said:

"Our conclusion, therefore, is that the transfer, before maturity, of negotiable paper, as security for an antecedent debt merely, without other circumstances, if the paper be so indorsed that the holder becomes a party to the instrument, although the transfer is without express agreement by the creditor for indulgence, is not an improper use of such paper, and is as much in the usual course of commercial business as its transfer in payment of such debt. In either case, the *bona fide* holder is unaffected by equities or defenses between prior parties, of which he had no notice. This conclusion is abundantly sustained by authority. A different determination by this court would, we apprehend, greatly surprise both the legal profession and the commercial world. (Citing authorities.)'' The above statement constitutes the federal rule. (*In re Hopper-Morgan Co.,* 154 Fed. 249.

See, also, the extensive note, 80 A. L. R. 670.) In short, the federal rule was in effect incorporated into the Negotiable Instruments Act. In those states where a different rule obtained prior to the adoption of that act it has been held that the adoption of said act changed the rule. (*Exchange Nat. Bank* v. *Coe,* 94 Ark. 387 [127 S. W. 453, 21 Ann. Cas. 934, 31 L. R. A. (N. S.) 287].)

The defendants earnestly rely on cases which involved an antecedent debt that had been discharged in bankruptcy, an antecedent debt that was barred by the statute of limitations, and an antecedent debt that had become worthless. Such facts are not involved in this litigation and we shall reserve a discussion of the law pertinent to such facts when the occasion arises.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 19, 1933.