[Civ. No. 14020.   First Dist., Div. Two.   Oct. 17, 1949.]

PACIFIC ODORITE CORPORATION OF SAN FRAN-
CISCO (a Corporation), Respondent, v. MAURY GERSH,
Appellant.

Edward N. Jackson for Appellant.

Hubbard & Hubbard and William J. Kretzmer, Jr., for Respondent.

DOOLING, J.—This action was instituted by the Pacific Odorite Corporation, respondent, against Maury Gersh, appellant, to recover damages for the breach of a contract to purchase the former's business and personal property in San Francisco. Gersh, the purchaser, appeals from the judgment entered in favor of respondent, the seller.

On August 23, 1946, appellant visited respondent's attorney, who was also a director and secretary of respondent corporation, informing him that he was interested in purchasing respondent's business and personal property. The purchase price was set at $30,338.91, appellant delivered his check for

that amount, and respondent's officer promised to deliver a bill of sale on August 26, 1946. On the designated date, appellant went to the office of respondent's attorney-secretary, made certain objections to the price formerly set, the board of directors of respondent thereat went into special session and set the price at $29,000, and a bill of sale was delivered to appellant, he promising to pay the total purchase price by September 10, 1946.

The bill of sale transferred all of respondent's business to appellant, sold a total of 2,635 Odorite Vaporizer Machines, 2,400 Vaporant Refill Blocks and office furniture and equipment, and stated that "The purchase price herein agreed to be accepted . . . is a reduction of . . . $1,338.91 from the offer which was made by (appellant) on August 23, 1946 (which is) an adjustment with respect to certain objections made by (appellant) and, in consideration of said reduction, (appellant) now buys said business and property as is, and after having made his own investigation. . . ."

Immediately after the bill of sale was delivered to appellant, he went to the office of respondent and was there introduced to the manager as the new owner. Appellant testified that at this time the manager brought to his attention a contract which a labor union proposed to enter into with respondent. According to appellant's testimony this proposed contract, if accepted by the corporation, or its successor, would increase expenses of the business and consequently lower its net profit. Appellant was not apprised of this union proposal at the time he entered into the agreement to purchase the business.

Appellant testified that he did not examine the books of the business until after he had agreed to purchase and he denied that he told anyone he had although a member of the board of directors of respondent testified that appellant stated that he had investigated the business and the bill of sale itself, signed by appellant, states that he had made an investigation. Appellant testified that respondent's attorney made representations to him prior to the sale concerning the profits of the business but this testimony was flatly contradicted and the trial court found in favor of respondent on this issue. Thus the testimony concerning misrepresentation or concealment of the profits of the business was in conflict and the finding of the trial court cannot here be questioned.

The predecessors of respondent corporation had entered into an agreement with one Ruben Davidoff and with

Monarch Laboratories, said agreement being made binding upon successors in interest, whereby it was agreed that no assignment of this contract for patented articles used in the business would be made "without the written consent" of Davidoff and Monarch. Respondent's attorney-secretary testified that respondent corporation never received a written consent to an assignment to appellant but did testify that on the day following appellant's original visit to his office he received telephonic consent to the assignment from the manager of Monarch Laboratories. The respondent, however, never communicated with Davidoff nor received his consent to assignment. The trial court's finding that Davidoff did consent to the assignment is therefore without evidentiary support and must be disregarded.

On August 28, 1946, appellant and his attorney visited respondent's attorney-secretary and informed him that appellant was rescinding the agreement to purchase respondent's business and on August 29, 1946, appellant sent respondent written notice of rescission. At this time appellant was told that respondent would probably seek damages from him. Thereafter according to respondent's officer's testimony the business was operated for the account of appellant until it was sold on March 3, 1947, for the price of $16,940. It was also testified that respondent's attorney-secretary notified appellant's attorney that respondent would hold appellant liable for any damages when the business was resold.

This action was instituted by respondent to recover the difference between $16,940, the price at which the business was sold on March 3, 1947, and $29,000, the price which appellant agreed to pay. The trial court found that appellant had abandoned the business after taking possession thereof, that respondent did not consent to appellant's rescission of the agreement, that because of appellant's abandonment of the business respondent resumed operation thereof until it was resold, that respondent diligently sought to resell the business and property, was unable to sell it until March 3, 1947, received the best offer obtainable, and the sum received constituted the reasonable value of the business at the time of the sale, that respondent made no false or fraudulent statements to appellant, that respondent procured from Davidoff and Monarch permission to make the sale to appellant and entered judgment for respondent for the difference between $29,000 and $16,940 less the profit earned during the period before resale.

The trial court's finding that there was no rescission by mutual consent finds sufficient support in the evidence. While a consent to rescission may be evidenced by conduct (4 Cal.Jur. 10-Yr. Supp. [1943 Rev.] 167) the retaking of possession of the business by respondent, its operation and resale are not necessarily inconsistent with an intention to hold appellant to his contract (*Phillips* v. *Stark,* 186 Cal. 369, 372 [199 P. 509] ; *Holmes* v. *Robarts,* 102 Cal.App. 53, 56 [282 P. 519] ; *Rice* v. *Navarro,* 91 Cal.App.2d 233, 237 [204 P.2d 633] ) especially in view of notice to appellant at the time that he orally refused to proceed with the sale that he would probably be sued for damages and later notice to his attorney that after resale such suit would be commenced; and the trial court's inference from the facts cannot be disturbed.

The question of diligence in effecting the resale was likewise for the trial court. (*Bonan* v. *Pacific Orient Co.,* 140 Cal.App. 68 [34 P.2d 1064] ; *Cheda* v. *Kockos,* 28 Cal.App. 374 [152 P. 735].) The resale of a business is not ordinarily as easy to effect as a resale of merchandise and the respondent's evidence is that it immediately attempted to make a resale and resold at the first opportunity.

There was no evidence of the market value of the business except the price of resale but the resale price is evidence of market value sufficient to support the judgment. (*Hamberger-Polhemus Co.* v. *Lewin,* 101 Cal.App. 704, 708 [282 P. 425].)

The alleged failure to disclose the negotiations for a union contract if sufficient to constitute fraud, was not shown to be material. Respondent's evidence showed that the negotiations were prompted by the fear of one employee that in the event of a sale of the business he might be discharged and that no contract was in fact ever forced on the business by the union. Concealment to constitute actionable fraud must be of a fact materially affecting the transaction (12 Cal.Jur. 740) and the trial court was entitled to find under the evidence that no such materiality existed. The refusal to allow appellant's testimony of the difference in profits if the union contract had been executed was proper since it constituted a hearsay statement of the respondent's office manager. The manager himself was later called by appellant and no attempt was made to prove the facts by him.

The failure to secure Davidoff's consent to the assignment was not pleaded as a failure of performance. It was only pleaded that respondent falsely and fraudulently represented

to appellant that it could assign its rights under the contract whereas the contract contains a clause specifically prohibiting an assignment, and this was also stated as one of the grounds of attempted rescission. Having repudiated the contract appellant cannot complain that respondent did not thereafter perform the idle act of procuring Davidoff's consent to an assignment to him. He did not sustain the burden of proving that Davidoff would not have consented to an assignment to him, as he presumably did to the later purchaser. To establish his defense that respondent represented that it could assign whereas the contract prohibits an assignment it was incumbent upon appellant to prove that Davidoff's consent could not have been obtained since the only prohibition in the contract is conditioned on the failure to give such consent, and the burden of proving the falsity of a representation is on the party asserting it.

Judgment affirmed.

Goodell, Acting P. J., and Runnells, J. pro tem., concurred.