[Civ. No. 15833.   First Dist., Div. Two.   July 15, 1954.]

A. L. PARKINSON, as Special Administrator, etc., Plaintiff and Respondent, v. THOMAS B. CALDWELL, Defendant and Respondent; SAN JOSE ABSTRACT AND TITLE INSURANCE COMPANY et al., Appellants.

Royal E. Handlos for Appellants.

Victor A. Chargin and Victor A. Chargin, Jr., for Plaintiff and Respondent.

Crist, Stafford & Peters and John M. Donegan for Defendant and Respondent.

DOOLING, J.—This is an appeal from a judgment in favor of plaintiff as administrator of the estate of T. W. Caldwell in which the plaintiff was decreed to be entitled to the proceeds of a promissory note secured by a deed of trust. The note had been paid by cross-complainant T. B. Caldwell to the San Jose Abstract and Title Insurance Company who along with Viola Lester complete the number of parties to this action.

Maud L. Caldwell, the sister of T. W. Caldwell (hereinafter called the Uncle) and aunt of T. B. Caldwell (hereinafter called the Nephew), died in 1935. She devised her entire estate to the Uncle for life with the remainder to go to the Nephew. Her estate was left in trust with the Uncle, the life beneficiary, to act as trustee of the property.

As a result of a will contest, the Uncle and Nephew entered into an agreement which provided for the distribution of the property under the terms of the will with the additional provision that the Uncle should not sell, encumber or reinvest the property of the estate without the Nephew's consent. The agreement also recognized that the Uncle had a valid claim against the estate in the amount of $24,876.65, and part of this claim was to be secured by a promissory note and deed of trust on the Barcelona Apartments, which was a part of the trust estate, in the amount of $13,942.05. This note was to be payable to the Uncle one year after his death but not before three years after date of note with interest at 6 per cent per annum. The agreement provided further: "Said note shall be payable to party of the first part and *shall be held by him* until it shall become due according to its terms unless there be an agreement between the parties to the con-

trary. Said party of the first part agrees to pay the interest on said note and deed of trust to himself and not to file Notice of Default or foreclose said note or deed of trust until after its maturity date and that there shall be no acceleration of maturity by reason of any default in the payment of interest, unless a special agreement is made to the contrary. It is agreed and understood that said party of the first part as trustee under the last Will and Testament of Maud L. Caldwell, Deceased, may execute said note and deed of trust to himself as individual, and that said note and trust deed shall constitute a valid lien against the said property; party of the second part hereby recognizes said note and deed of trust as a valid existing obligation as hereinabove set forth." (Emphasis ours.)

The court distributed the estate pursuant to the provisions of the will of decedent and the above agreement, carrying the provisions of the agreement above quoted into the decree.

After the entry of the decree of final distribution, the Uncle as trustee executed the promissory note to himself as payee and the deed of trust to secure it, pursuant to the terms of the agreement. The note on its face, in accordance with the prior agreement and decree of distribution, contained the provision: "This Note shall be held by said payee until it shall become due according to its terms, unless there be an agreement between said payee and Thomas B. Caldwell to the contrary." The deed of trust was recorded on January 19, 1937, and on the same day the Uncle executed a promissory note to John S. and Viola Lester, as joint tenants for the sum of $12,000. As collateral security the Uncle pledged the promissory note executed by him as trustee payable to himself as an individual and also the deed of trust which was security for this promissory note.

On the death of the Uncle the Nephew deposited the sum of $13,455.83 with the San Jose Abstract and Title Insurance Company in payment of the note and asked the latter as trustee of the trust deed to reconvey the property to him. Evidently the title company did this in February, 1952.

Prior to the death of the Uncle, John Lester died and Viola Lester as surviving joint tenant demanded of the title insurance company that it pay her $12,000 with interest out of the $13,455.83 deposited with the company on the ground that she held the note and trust deed as security for the Uncle's debt.

Plaintiff, the administrator of the Uncle's estate, brought

an action praying that he be decreed owner of the original promissory note and deed of trust and of the moneys deposited by the Nephew with the title company. One defendant and cross-complainant is the Nephew and he prayed that the court order the money to be turned over to plaintiff in order that it may be used in the proper payment of the obligations of the estate of the Uncle. Defendants Viola and title company prayed that the company be directed to pay to Viola $12,000 plus interest and that the remainder only be paid to the plaintiff. The trial court found for plaintiff in that the purported pledge of the Caldwell note and deed of trust has no force and effect and the $13,455.83 is to be paid to the plaintiff.

Appellants are the title company and Viola Lester and they make three contentions on appeal: (1) The pledge of the Caldwell note and deed of trust is valid; (2) the restriction against the transfer of the Caldwell note is void; (3) the judgment violates the unjust enrichment rule.

The first question presented involves the proper construction of the words: "This note shall be *held* by said payee until it becomes due. . . ." The holder of a note is defined in the Uniform Negotiable Instrument Act, Civil Code, section 3266: "'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Since the word "holder" has a settled meaning in the law of negotiable instruments, the meaning of the agreement that the note shall be "held" by the payee seems clear. By the very definition above quoted it means that he shall as payee continue "in possession of it." This agreement was clearly violated when the Uncle pledged the note. Not only did he cease to be in possession of the note but under section 3108, Civil Code, the pledgee of a promissory note "is deemed a holder for value to the extent of his lien," and the California cases so hold. (*First Nat. Bank of Tustin* v. *Landreth*, 128 Cal.App. 138, 143 [16 P.2d 1010]; *Robb* v. *Cardoza*, 127 Cal.App. 588, 590-591 [16 P.2d 325]; *Williams* v. *Walker*, 66 Cal.App.672, 675 [226 P. 939]; *Peoples State Bank* v. *Penello*, 59 Cal.App. 174, 177 [210 P. 432].)

Appellants cite cases holding that the pledgor of a promissory note retains title to the note. They are not here in point. The pledgee becomes a holder of the note to the extent of his lien and an agreement by the payee to hold the note until its maturity clearly forbids that any other person should hold it during that time.

■ Where the language is clear an agreement not to assign a debt is effective. The precise question was elaborately discussed by the New York Court of Appeals in *Allhusen* v. *Caristo Const. Co.,* 303 N.Y. 446 [103 N.E.2d 891], and at page 893 (103 N.E.2d) the court concluded:

"In the light of the foregoing, we think it is reasonably clear that, while the courts have striven to uphold freedom of assignability, they have not failed to recognize the concept of freedom to contract. In large measure they agree that, where appropriate language is used, assignments of money due under contracts may be prohibited."

So in 4 Corbin on Contracts, section 872, page 486, the author says:

"In any case, it is quite possible for the parties to show by apt words that rights created by the contract shall not be assignable. It is obvious that they mean exactly this and nothing else in case the contract is unilateral from the beginning. . . . So if A lends money to B, receiving from B a note that expressly declares that it is not assignable, there is no doubt that they mean A's right to the money to be non-assignable."

The Uncle here both by express agreement and by the decree of distribution, which was the only source of his authority to execute the note as trustee to himself as payee, was expressly bound to hold the note until maturity. The purpose of that limitation was clear, that he should not transfer the note before maturity to anyone, either by way of pledge or otherwise.

■ We are not impressed by the argument that this limitation on the power to assign or transfer the note is invalid. A contract right has its origin in the agreement of the parties and if the parties by their free agreement place a limitation on the right at the very time of its creation no good reason occurs to us why they may not do so. The New York Court of Appeals in *Allhusen* v. *Caristo Const. Co., supra,* 103 N.E.2d at page 893, said of a similar argument of invalidity: "Such a holding is not violative of public policy. Professor Williston, in his treatise on Contracts, states (vol. 2, § 422, p. 1214): 'The question of the free alienation of property does not seem to be involved.' The New York cases do not hold otherwise. . . . Plaintiff's claimed rights arise out of the very contract embodying the provision now sought to be invalidated. The right to moneys under the contracts is but a companion to other jural relations forming an aggregation of actual and potential

interrelated rights and obligations. No sound reason appears why an assignee should remain unaffected by a provision in the very contract which gave life to the claim he asserts.''

The California courts are in accord. In *La Rue* v. *Groezinger*, 84 Cal. 281, the court said at page 283 [24 P. 42, 18 Am.St.Rep. 179] : ''if the contract itself provides in terms that it is not transferable, it certainly cannot be transferred, although it otherwise might be so.'' And the court said in *Fairbanks* v. *Crump Irr. etc. Co., Inc.*, 108 Cal.App. 197, at page 205 [291 P. 629, 292 P. 529] :

''The contract, as we saw, provided that 'any and all moneys due' might be assigned with Fairbanks' 'written consent.' Appellant rightly says that no such language was needed to make payments due assignable. But the language, having been used, must be given some effect, and it would have none unless it were tantamount to a provision that payments should *not* be assigned *until due*, and *not then without Fairbanks' written consent*. We are aware of no reason why the provision, as so construed should not be given effect.''

We see no reason to follow the cases from other jurisdictions cited by appellants which seem to hold otherwise.

Finally appellants argue that to permit the Uncle's estate to recover the proceeds of the note will result in its unjust enrichment, since the Uncle received the money the repayment of which was attempted to be secured by the pledge of this note. Were only the Uncle's estate and appellants involved this might well be true, but the agreement not to assign without the consent of the Nephew was obviously inserted for the protection of the Nephew's rights. It was established in the trial court that the estate of the Uncle is insolvent and that the Nephew has a claim against the Uncle's estate of approximately $10,000 for taxes which the Uncle failed to pay on the trust estate during his lifetime. It is the express duty of the life tenant to pay taxes: ''The owner of a life estate . . . must pay the taxes. . . .'' (Civ. Code, § 840) and the liability of the Uncle's estate on this claim cannot be questioned. The purpose of the agreement to hold the note unless the Nephew consented to its transfer, can only have been for the protection of the Nephew's rights. The note was secured by deed of trust on property in which the Nephew had a remainder in fee. Its payment after the Uncle's death according to its terms could only be by the Nephew, to protect the property which secured it, or by sale of the Nephew's property under the deed of trust. The

Nephew thus had a very real interest in the transaction. He had the further interest of being assured that the money due on the note would be paid to the estate, and there be available for his protection in case his Uncle violated any of the terms of the trust, a contingency which has in fact occurred. Appellant Lester with full knowledge of the limitation on the power of transfer took the note in pledge with her eyes open. The note on its face gave notice to appellants that the Nephew was interested in the agreement of the Uncle to hold the note until maturity, because it expressly provided ''unless there be an agreement between said payee and Thomas B. Caldwell to the contrary.'' As between appellants and the Nephew the equities are with the Nephew and the rule of Civil Code, section 3543, is applicable: ''Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.''

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied August 13, 1954, and appellants' petition for a hearing by the Supreme Court was denied September 8, 1954. Edmonds, J., was of the opinion that the petition should be granted.