[Civ. No. 19713. First Dist., Div. One. Aug. 21, 1962.]

CHARLES J. BENTON, Plaintiff and Appellant, v. HOF-
MANN PLASTERING COMPANY et al., Defendants
and Respondents.

Francis T. Cornish for Plaintiff and Appellant.

Lindsay & Pettis, Warren G. Reid, Merrill, Commons, Hooper & Miller, Alan A. Lindsay and Wayne M. Hooper for Defendants and Respondents.

BRAY, P. J.—Plaintiff Benton sued defendants Hofmann Plastering Company and Coelho in declaratory relief and for judgment against Hofmann for moneys advanced to defendant Coelho to enable Coelho to perform certain lathing contracts with Hofmann, to recover from Hofmann proceeds paid to Coelho under contracts assigned to plaintiff, to recover certain sums from Coelho, and to foreclose a deed of trust executed by Coelho and wife to Benton to secure advances.

Hofmann cross-complained claiming Coelho and Benton were partners, and sought damages for a breach of two lathing contracts by Coelho and for defective performance of a third.

Coelho then cross-complained[1] against Benton claiming partnership between him and Benton, seeking dissolution of partnership, appointment of receiver, and cancellation of deed of trust for lack of delivery and execution, and coercion.

Plaintiff appeals from the denial of most of the relief sought by him.

### QUESTIONS PRESENTED

Although there were many issues presented by the pleadings, the parties at trial limited the issues to be determined. They were:

1. The character of the Benton-Coelho agreement as to whether it was an agreement for advances to be repaid only from proceeds of contracts or for advances under a continuing obligation on Coelho's part to repay all moneys advanced.

2. Whether the assignments of proceeds from the Coelho-Hofmann contracts to Benton prevailed over their assignments to Hofmann.

3. Is plaintiff bound by the settlement of the Eden Office Building contract?

4. The validity of the deed of trust from Coelho to Benton.

5. Findings.

---

[1]This cross-complaint was dismissed by Coelho.

## 1. *The Benton-Coelho Agreement.*

 Defendant Coelho was engaged in the business of installing lathing in connection with various building contracts. Benton had advanced him money to aid in the financing of many of these projects. There is a dispute as to whether the money so advanced constituted a loan or an investment. We are not concerned with that question other than as an aid in interpreting the agreement which Benton and Coelho entered into December 21, 1953. It provided that in consideration of past and future advances by Benton, Coelho assigned to Benton the proceeds of all contracts which Coelho had entered into and which he might enter into for the performance of which contracts Benton had advanced or would advance moneys to Coelho. Coelho agreed that upon all jobs financed by Benton, Coelho would impress upon the invoices on such jobs a rubber stamp provided by Benton which read "Moneys due under the within job are assigned to Charles J. Benton pursuant to agreement evidenced by formal writing dated December _____, 1953." Apparently this condition was met.

The agreement provided: "The signed imprint of said stamp upon any invoice shall conclusively establish as between the parties . . . that Benton has advanced money to Coelho to finance him in the performance of the job represented by the invoice so imprinted, and that said advances have been made pursuant to the formula set forth in this memorandum of agreement.

"Upon making any advance such as Benton . . . shall hereafter make to Coelho to enable Coelho to finance any lathing job, all moneys due to Coelho or thereafter to become due to Coelho by virtue of the contract to which said advance relates are by virtue of any such advance assigned by Coelho to Benton. Upon request from Benton, Coelho shall execute any formal document appropriate to evidence the assignment."

The parties agreed that the advances should be repaid as follows: "After all expenses for labor and materials used in the performance of each lathing job have been paid, as much of said proceeds advanced by Benton or paid for said lathing job as remain shall be paid to Benton until Benton shall have received the full amount of all advances on that contract. Should said proceeds be insufficient for that purpose, *any deficiency shall be paid to Benton out of the proceeds of other lathing jobs until Benton shall have received the entire principal advanced on each lathing job completed.* [Emphasis added.]

"If after all labor and materials have been paid and Benton has been reimbursed all moneys he has advanced to finance all lathing jobs completed, and any of the proceeds from any completed lathing job shall remain, Coelho shall be paid from said proceeds remaining up to an amount equal to 7% of the gross contract price charged by Coelho for that job. The balance thereafter remaining shall be divided equally between Benton and Coelho.

"The parties hereby expressly confirm that on all jobs heretofore performed by Coelho, whether settlement has been heretofore effected or whether settlement remains to be made, the advances by Benton have been on the basis outlined in this memorandum of agreement *and on no other basis.*" (Emphasis added.)

Plaintiff advanced Coelho moneys on jobs started before the above-mentioned contract was entered into as well as after. All of the jobs were under contracts between Hofmann and Coelho. Hofmann was a plastering contractor who sublet the lathing to Coelho. Over the period involved Benton advanced some $73,000 which was not paid back to him. On occasion funds advanced by Benton for a particular job were used by Coelho, unknown to Benton, to pay indebtedness on other jobs for which Benton was providing the financing.

Benton contends that the contract constituted a loan agreement requiring repayment of all moneys advanced. Coelho contends[2] and the court found, that the contract was a loan agreement, repayment to be made solely from the proceeds of the lathing contracts. We adopt the statement of the trial judge, Honorable Joseph A. Murphy, in holding that the intent of the agreement was that repayment of advances should come solely from the lathing contracts. "The agreement provides that Benton shall advance certain funds to Coelho on contracts which are then assigned to Benton, and, in the event that there is a loss on the contracts, such loss may be recouped from any subsequent contracts. This phase of the agreement, in the opinion of the court, indicates that each advance was, in fact, a debt due from Coelho to Benton because of the fact that either party could cancel the agreement at any time, and, conforming to the intent of the agreement if it were cancelled, Coelho's obligation to Benton for any losses up to the time of cancellation would automatically terminate.

[2]Coelho originally contended that the agreement was one of partnership between Benton and himself. This contention was abandoned at the trial.

This is also borne out by the fact that Benton set up a reserve account against individual contracts, indicating that it was his intent that such reserve would liquidate not only the contract from which the reserve was drawn, but also any future contracts. This is also supported to some extent by the admission of Benton that be [he] made considerable profits on prior contracts and that at the outset he told Coelho he would like to get into the business to 'make a fast buck.' All of the circumstances and dealings would indicate that it was purely speculative . . . .

"There was testimony that Coelho made certain misrepresentations to Benton prior to November 22, 1957, and on the basis thereof procured advances from Benton. The evidence, however, is susceptible to a further inference; namely, that, while the funds advanced were not used on the particular job noted in the assignment, they were used on other jobs which had previously been financed by Benton; hence, the question of fraud is speculative and not proved by a preponderance of evidence. It is also to be noted that after discovery of the fraud, Benton continued to make advances to Coelho."

The agreement provides for repayment of the loans out of the proceeds of present contracts, and if these are insufficient, out of future contracts. There is no provision expressly relating to repayment of the loans in the event that both of these sources should prove insufficient. On the face of the contract, it appears that the parties provided with particularity for the sources of repayment of the loans, thereby indicating that the parties intended those sources to be the sole method of repayment. As the contract is ambiguous, the court looked behind it to the evidence, and concluded from both the contract and the evidence what the intent of the parties was. Benton contends that the fact that the deed of trust executed by Coelho and wife was to secure to Benton "payment of indebtedness in the sum of any deficiency arising through beneficiary having financed Alvin George Coelho in purchasing and installing lathing . . ." conclusively shows that the loans were to be fully repaid. The court apparently believed the testimony of both Coelho and his wife that they were persuaded by Benton to execute the deed of trust to protect their home from Coelho's creditors. Therefore the court's finding that Benton is not entitled to recover from Coelho the unpaid balance of the moneys advanced by Benton should be affirmed.

2. *Assignments.*

As stated hereinbefore, the Benton-Coelho agreement provided that all proceeds of lathing contracts for which Benton

made advances were assigned to Benton. While the record is not clear as to whether all the Hofmann-Coelho contracts under which Coelho did the lathing jobs contained the same provisions as to nonassignability of the moneys to become due thereon, or whether they all contained nonassignability clauses, the parties have assumed they all had the following clause or one similar to it: "That no assignment of this Subcontract, nor of any money due or which may become due hereunder shall be made without the written consent of the Contractor [Hofmann]."

█ The court found that "provisions of the Hofmann-Coelho agreements against assignment of money due or to become due by virtue of said agreements did not, under the law of this State, prevent the assignment by defendant Coelho of such moneys to plaintiff, and therefore plaintiff, as Coelho's assignee, is entitled to judgment for the following sums. . . ."

The court was in error in its statement, which, in effect, declared that the law of California considered nonassignability clauses of this kind ineffective. In *Parkinson* v. *Caldwell* (1954) 126 Cal.App.2d 548, 552 [272 P.2d 934], the court stated: "Where the language is clear an agreement not to assign a debt is effective." The court, after referring to a New York decision, relies upon language in 4 Corbin on Contracts, section 872, page 486, where the author stated: "In any case, it is quite possible for the parties to show by apt words that rights created by the contract shall not be assignable."

The court also relies upon the holding in *Fairbanks* v. *Crump Irr. etc. Co., Inc.* (1930) 108 Cal.App. 197, 205 [291 P. 629, 292 P. 529]. In *Fairbanks* the court held that a provision that money due under a contract might be assigned with the permission of the obligor, is the same as a provision that it may not be assigned without such permission and that such a provision should be given effect. *Parkinson* concurs in this conclusion. (See also 37 A.L.R.2d 1251, 1253.)

█ There is a distinction between an assignment of a contract and an assignment of the proceeds of the contract. See *Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 339 [182 P.2d 182], holding that a provision in a contract against assignment does not preclude the assignment of money due or to become due under the contract. █ However, here the prohibition was against assigning either the contract or the moneys to become due thereunder. Such a prohibition is proper. (See 4 Corbin on Contracts, pp. 482, 486, 494.)

*Trubowitch* also implies that the parties may effectively so provide by the use of appropriate language.

■ Section 176 of the Restatement of Contracts provides: "A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the *assignor* by the assignment or the obligor from discharging his duty under the contract in any way permissible if there were no such prohibition." That provision is in accord with the statement in 5 California Jurisprudence 2d 292, which states: "It appears that the courts will generally refuse to enforce nonassignability clauses, at least as between the assignor and assignee and those claiming under them, where the transfer works no substantial detriment to the rights of the other party to the contract. [Citing 35 Cal.L.Rev. 577.] Thus, it is ruled that clauses restricting assignability are for the benefit of the obligor, and do not prevent the assignee from acquiring rights against the assignor by an assignment apparently prohibited by the terms of the contract."

In the instant case it is the obligor who will apparently suffer if the assignment is held valid as against him. The validity of the assignment does not aid plaintiff in seeking recovery against Coelho, as his rights against Coelho exist independently of the assignment. The only question is one of set-off and priority as between Hofmann and plaintiff.

■ The area of limitations on assignments is, of course, one in which the courts strictly construe such restrictions just as they jealously guard the right to transfer property in general. However, explicit language will be followed in cases of this kind. ■ The court in *Thomas* v. *Thomas* (1961) 192 Cal.App.2d 771, 779 [13 Cal.Rptr. 872], after quoting from *Fairbanks* v. *Crump, supra,* 108 Cal.App. 197, and *Parkinson* v. *Caldwell, supra,* 126 Cal.App.2d 548, notes, "The courts, of course, have placed certain limits on nonassignment clauses—there is strong policy in favor of the free transferability of all types of property (*Farmland Irrigation Co.* v. *Dopplmaier,* 48 Cal.2d 208, 222 [308 P.2d 732]) ; accordingly, where the restriction against assignability is waived, rights may be transferred despite the prohibition (*Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 342 [182 P.2d 182]), and the prohibition does not apply where all that remains to do under the contract is the payment of money. (*Butler* v. *San Francisco Gas & Elec. Co.,* 168 Cal. 32, 41 [141 P. 818].) Here, it is conceded, there has been no waiver by Edison as

obligor; also, the *Fairbanks* case, quoted from *Parkinson* v. *Caldwell, supra,* would seem to support the view that *where the prohibition against assignment relates to money due under a contract, it will be enforced where the prohibition in question is explicit."* (Emphasis added.)

 Here there is no question of waiver by Hofmann. The prohibition in the lathing contracts extends not merely to the contracts themselves but to the money due or to become due thereunder as well. The nonassignment provisions are valid and should be enforced. Hofmann's right to the moneys under the Coelho-Hofmann lathing contracts is superior to that of Benton, as assignee. However, as Hofmann did not appeal from that portion of the judgment awarding Benton $4,415.80 against Hofmann, such award must stand.

Although the court's finding that Hofmann was entitled against Benton to the proceeds of the "Capwell Store" Hofmann-Coelho lathing contract was based upon a different theory than the nonassignability of the moneys under that contract, and such theory may have been incorrect, the result was correct, as, because of the nonassignability clause, Hofmann had the superior right to those moneys.

For the same reason the question of the appropriateness of the court's allowing certain set-offs against Benton in favor of Hofmann of moneys it found due from Coelho to Hofmann, has become moot.

3. *The Eden Office Building.*

 On what is known as the Eden Office Building, upon which Coelho did the lathing under a subcontract with Hofmann, there was a balance unpaid to Coelho of $6,617.89. This balance Hofmann refused to pay because the County of Alameda for whom the work was being done claimed that the plastering did not comply with the specifications, and refused to pay the general contractor, who in turn refused to pay Hofmann. There is a conflict in the evidence as to whether the fault was that of Coelho or of Hofmann, although there is strong evidence that the fault was Coelho's. It is not necessary to discuss this evidence for the reason that in a meeting at which Benton was present, with Coelho, Hofmann, and representatives of the county and of the general contractor, Hofmann and Coelho waived any right to receive additional payments in consideration of acceptance of the defective building by the county. At this meeting, when asked if he had any objections to the compromise, Benton made no reply.

The court concluded that this compromise agreement "was in effect a new contract between the parties, and that the so-called 'fruits' of the contract never became due to Hofmann or to Coelho, hence plaintiff, as assignee of Coelho, is entitled to recover nothing" from the Eden Office Building job.

The court's conclusion must be affirmed for two reasons: (1) As we have heretofore shown, the assignment of the proceeds of the contract by Coelho to Hofmann is superior to the assignment to Benton. Hence Hofmann had the right to make the compromise. An obligor who has accepted an assignment of the money due under a construction contract may settle a claim under the contract by accepting a lesser sum in settlement. The "anticipatory debtor may . . . do whatever reasonably appears to be necessary to enable the assignor to perform the contract." (*Peden Iron & Steel Co.* v. *McKnight* (1910) 60 Tex.Civ.App. 45 [128 S.W. 156].) (2) Even if the assignment by Coelho to Benton granted the latter any interest in the proceeds of the Eden contract, Benton's acquiescence, by silence, in the compromise bars him from now contending that he is not barred by it. Benton had a great interest in Coelho's continued solvency. Without a compromise of this type, Coelho was faced with a lawsuit to prove that the defective work was not his fault, or with considerable expense to repair the work, neither of which Coelho could afford. Although Benton contends that he had no duty to reply when asked if he had any objections to the compromise, his conduct led Coelho and Hofmann into a trap, and they reasonably had the right to assume and did assume that Benton's silence constituted consent. Both Coelho and Hofmann acted to their detriment in reliance upon Benton's failure to object. Thereby, by his failure to object, Benton waived any objection that he might have had.

4. *The Deed of Trust.*

On November 14, 1957, Coelho and his wife signed a deed of trust conveying to a title company, as trustee, certain real property in Alameda County as security for the advances made by Benton under the December 21, 1953, Benton-Coelho agreement. The court found "that plaintiff represented and promised defendants Alvin G. Coelho and Anita K. Coelho that if the said deed of trust were executed and delivered to plaintiff, plaintiff would continue to finance Coelho on his lathing jobs; that it is also true that at the time of making said representation and promise, plaintiff did not intend to keep his promise and did not intend to continue

financing Coelho and that shortly thereafter plaintiff refused to continue financing Coelho." In its conclusions, the court stated "that the execution and delivery of the deed of trust were vitiated by plaintiff's false promise and plaintiff is not entitled to foreclose said deed of trust."

Benton contends that neither the pleadings nor the evidence supports these findings. Both contentions are unfounded. In the Coelho cross-complaint Coelho alleged "that there was no proper execution acknowledgement or delivery of said instrument and *further that said defendants were coerced into signing said instrument by said plaintiff.*" (Emphasis added.) The court, both in its pretrial order and in its findings of fact, found that there was due execution and delivery of the instrument. It is the consideration for its execution and delivery with which we are concerned. In addition to the allegation in the cross-complaint that the instrument was obtained by coercion, the pretrial order states, "There is the further issue of the validity of the deed of trust." During the trial, the court granted Coelho's motion to amend to conform to the proof "in that there was either no consideration given by plaintiff Benton for the Deed of Trust, or if consideration was given there was a failure of consideration by Plaintiff Benton." Thus it is clear that the pleadings support the findings.

Benton points out that while the court granted leave to amend, no formal amended pleadings were filed, and contends that therefore the amendment allowed may not be considered. His contention is hypertechnical and is not supported by the decisions. The Supreme Court stated in *Campagna* v. *Market St. Ry. Co.* (1944) 24 Cal.2d 304, 308 [149 P.2d 281] : "As a general rule, an order granting leave to amend is not an amendment, and in the absence of a written statement of facts concerning the issue, it is not properly pleaded. (*Central Cal. Creditors' Assn.* v. *Seeley,* 91 Cal. App. 327 [267 P. 138].) But when such a motion is granted during the trial, and the case is tried as if the amendment had been made, a party may not later complain that no formal amendment was filed. [Citations.]"

The court in *Campagna* commented on the wide discretion which a trial court has to allow amendments to conform to proof, and in view of the presence of the issue of the validity of the deed of trust in the pretrial order, this discretion was wisely exercised in the instant case, and the issue of failure of consideration (continued financing) was properly before the trial court.

Turning to the evidence, while the testimony of Benton to the effect that the deed of trust was given him to secure the advances he had made, conflicts with that of the Coelhos, the court apparently believed the latter and resolved the conflict in their favor. We are bound by that determination, as there is substantial evidence to support it. According to Mrs. Coelho, Benton threatened to terminate his financial backing of the lathing contracts if she did not sign the deed of trust. Benton told her he only wanted it to prevent creditors from reaching the Coelho home. He stated to her, "if I didn't sign it, he wouldn't go on, *but, if I signed, then he would go on and continue to finance until the jobs were pulled out.*" (Emphasis added.) The other testimony in general relates to Benton's statements that he would *not* finance the lathing contracts if Mrs. Coelho refused to sign. The quoted statement alone is sufficient to support the findings. Mrs. Coelho testified that she would not have signed the deed of trust without such representations and promises. It is admitted that Benton ceased financing Coelho shortly thereafter.

While there is no direct evidence that Benton, at the time of his representations to the Coelhos, did not intend to carry out his promises, the court was entitled reasonably to infer from all the facts and circumstances that he had no intention of doing so. A promisor who does not mean what he says seldom reveals his true state of mind. That must be determined by the trier of fact from what the promisor does under all the circumstances of the case. (See *Cox* v. *Klatte* (1938) 29 Cal. App.2d 150 [84 P.2d 290].) Benton received profits from the Coelho lathing contracts until January 1958. At that time Benton ceased advancing money to Coelho, although several jobs were still in progress and required financing in order to be completed. There is evidence that both Benton's and Coelho's losses on the entire transaction were due to Benton's ceasing to advance further moneys, and Coelho's inability to otherwise finance himself. Coelho, in several instances, was forced to abandon his lathing contracts for this reason.

Even partial failure of consideration is a defense to foreclosure of a mortgage or deed of trust. (*Briggs* v. *Crawford* (1912) 162 Cal. 124, 129 [121 P. 381].)

Benton interprets the findings and conclusion above mentioned as findings of fraud and claims that no fraud was alleged and hence these findings are improper. Technically, Benton may be correct in that the findings might be susceptible to such interpretation. However, the facts upon which

they are based show, and the findings and conclusion may reasonably be interpreted as determining, that there was a failure of consideration for the execution of the deed of trust. As Judge Murphy said in his memorandum opinion, "Benton represented to the Coelhos, and particularly Mrs. Coelho, that if the deed of trust were executed and delivered, he would continue to finance Coelho on his jobs. Within a short time thereafter he refused to continue financing Coelho and Coelho was compelled to abandon his business as a lathing contractor."

5. *Findings.*

Benton objects to finding II dealing with the ninth cause of action, the count in which Benton sought recovery from Coelho of $72,194.83 and foreclosure of the deed of trust. This finding is to the effect that under the terms of the agreement between Benton and Coelho, Benton agreed to finance Coelho in the performance of the lathing contracts. Actually, as Benton points out, there is no promise made by Benton to make advances, in the agreement, the agreement being unilateral in that respect. However, such finding is immaterial. The court nowhere bases its judgment upon any assumption that Benton was required *under the contract* to continue making advances. It did find that the deed of trust was obtained under representations by Benton that he would continue to finance Coelho. There is no conflict between the two findings and the fact that the first finding is unsupported is immaterial.

Finding XIII is to the effect that the Benton-Coelho agreement did not provide for a continuing obligation on the part of Coelho to repay all moneys advanced, and that "it is not true that defendant Coelho acted with intent to defraud plaintiff with respect to the amounts of payroll furnished to various lathing jobs from moneys advanced by plaintiff."

Benton's objection to the first part of this finding is that the court failed to find either that there was or was not an agreement, implied by law, that Coelho would repay all advances. Such a finding was unnecessary. Where, as here, the court found that there was an express agreement as to the method of payment, the law cannot imply a contract in the face of such express agreement.

As to the second part of the finding, it is true that at times Coelho used moneys advanced by Benton for a particular lathing contract to pay debts incurred on another contract, or other contracts. The trial judge's opinion gives the reason for

finding that in so acting Coelho did not intend to defraud Benton. Under the agreement any losses Benton suffered were to be recouped from other jobs. The instances in which Coelho used moneys from one job to offset losses on another, caused no net loss to Benton on the total for all the jobs. Moreover, that Benton acquiesced in this type of action is shown, as stated by the court, by the fact that he continued for approximately two to three months after knowledge, to finance the jobs. The court made no finding as to the amounts of the payments in this category. In view of the court's determination of the subject, there is no necessity for such a finding, as the amount of such advances is immaterial.

The other findings or their subject matter objected to by Benton have been discussed elsewhere herein.

The judgment is affirmed.

Sullivan, J., and Agee, J.,* concurred.

*Assigned by Chairman of Judicial Council.