[Civ. No. 25051.   First Dist., Div. Three.   Dec. 9, 1968.]

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff and Appellant, v. JAMES I. BARNES CONSTRUCTION CO. et al., Defendants and Respondents.

Bohnert, Flowers & McCarthy and Arthur M. Bohnert, Jr., for Plaintiff and Appellant.

Wallace & Wallace and A. W. Wallace for Defendants and Respondents.

BROWN (H. C.), J.—This is the second appeal in this case. The original complaint was filed by St. Paul Fire & Marine Insurance Company (St. Paul) on November 27, 1959 alleging that James I. Barnes Construction Co. (Barnes), after notice, had improperly paid money to Stewart & Nuss, Inc. (Stewart) that was due it under an assignment from Stewart. The trial court decided in favor of St. Paul in the amount of $37,964.10 and the Court of Appeal affirmed the decision. The Supreme Court reversed and remanded for retrial of the action. (*St. Paul Fire & Marine Ins. Co.* v. *James I. Barnes Constr. Co.,* 59 Cal.2d 691, 697 [31 Cal.Rptr. 52, 381 P.2d 932].)

The second trial without a jury resulted in a judgment in favor of St. Paul on January 30, 1967, in the amount of $1,540.64.

A detailed statement of facts is contained in the opinion of the court in *St. Paul Fire & Marine Ins. Co.* v. *James I. Barnes Constr. Co., supra,* 59 Cal.2d 691, and for the purpose of this opinion is summarized.

Barnes was the general contractor for the construction of

the Fresno County Hospital. Stewart was the subcontractor for the paving and grading work. Barnes required that Stewart obtain a performance bond, the premium to be paid by Barnes. Stewart obtained a bond issued by St. Paul in favor of Barnes with Stewart as principal. The application for the bond contained the following provision: " 'For the better protection of the Company, [Stewart agrees] to assign, transfer and convey, and does hereby assign, transfer and convey to . . . [St. Paul] . . . but only in the event of any breach, delay, or default on the part of . . . [Stewart] in the performance of the contract covered by said bond or bonds, failure or inability of . . . [Stewart] to promptly pay, satisfy and discharge any and all obligations which might constitute possible claim under the bond or bonds, or breach of any of the terms of this agreement,' all of Stewart's right, title and interest in and to the contract together with all sums due or to become due thereunder." (*St. Paul Fire & Marine Ins. Co.* v. *James I. Barnes Constr. Co., supra,* at p. 695.)

Under the contract between Barnes and Stewart, payments for Stewart's work in the total sum of $52,733.32 were to be made in installments as the work progressed. The first progress payment was made on November 20, 1957 in the sum of $14,769.22. On that date St. Paul advised Barnes that it held Stewart's assignment and requested that Barnes withhold further payments to Stewart. Barnes acknowledged the letter and requested advice as to how future payment was to be made. On January 12, 1958 St. Paul repeated its November 20 letter and further informed Barnes that Stewart intended to file bankruptcy. Barnes replied stating no further monies would be paid Stewart until authorized by St. Paul.

When the time came for further performance, Barnes called upon Stewart to proceed and the work was completed late in 1959. Barnes continued to pay Stewart in installments as the work progressed as follows: $30,317.77 on December 29, 1958; $2,373 on May 20, 1959, and $5,273.33 on February 12, 1960. Barnes did not call upon St. Paul to make any payment on account of Stewart or to perform any act under its bond. However, St. Paul made payments to two of Stewart's subcontractors, Elias and Decker, early in 1958 for services performed prior to November 1957.

St. Paul brought an action against Barnes for losses it suffered on bonds it had issued for Stewart on other jobs, and in the first trial received judgment for $37,964.10. This was

the amount Barnes had paid to Stewart after he had received notice of the assignment. The Supreme Court reversed this decision on the ground that the assignment was a conditional assignment for security rather than an absolute assignment. (*St. Paul Fire & Marine Ins. Co.* v. *James I. Barnes Constr. Co., supra,* at p. 692.) The Supreme Court held that when an assignment is for security and the debtor pays the assignor after notice, the assignee can recover from the debtor of the assignor only if its security has been adversely affected, that is, only if it has suffered a loss. The Supreme Court reversed the judgment of the trial court with the following conclusions and directions: "For these reasons we conclude that: (1) the language of the assignment did not create a present transfer, but only a conditional transfer in the event that it became necessary for St. Paul to pay or perform under its bond; (2) that there remains an unresolved question as to whether that condition ever existed, and as to which the trial court must make findings; (3) that the trial court must also make findings on the issue of whether Barnes was excused (because of either fraud, mutual mistake of fact or St. Paul's subsequent default) from any obligation to St. Paul because of its agreement to withhold payments for St. Paul's account; (4) that there is no finding on the question of whether Barnes' payments after notice were necessary to enable the assignor [Stewart] to complete its contract; (5) that there is no finding on the issue of whether St. Paul suffered any detriment by reason of Barnes' payments to Stewart; . . ." (*St. Paul Fire & Marine Ins. Co.* v. *James I. Barnes Constr. Co., supra,* at p. 702.)

At the second trial St. Paul produced evidence (after amending its complaint) that it had suffered loss in the sum of $45,084.61 on approximately ten other construction jobs of Stewart's for which it had written additional indemnity bonds. Included in the total loss were two losses attributable to the Stewart-Barnes contract, i.e., the amounts due two parties named Elias and Decker.

The trial judge found that Stewart was unable to pay and meet its obligations to Elias and Decker; that these obligations constituted possible claims under the bond written by St. Paul; and concluded that St. Paul was justified in paying the claims and, therefore, was entitled to the sum of $1,540.64. ($705.49 to Elias, $146.33 to Decker, and expenses and fees in connection with said payments in the sum of $688.82.)

The trial judge also found that Barnes had made no demands upon St. Paul for performance under the bond; that Barnes paid Stewart after notification of the assignment; that such payments were necessary for the completion of the work contracted for; that if payments had not been made to Stewart, performance of the work contracted for would have been rendered impossible and that liens and stop-notices would have been filed against the hospital which was a public works job; and that if Stewart had not been paid by Barnes, St. Paul would have been contractually obligated to provide the performance under the Stewart-Barnes contract and to expend monies therefor.

Appellant St. Paul in this appeal presents the same contention that was before the Supreme Court on the first appeal, i.e., that the assignment by Stewart, of which Barnes was repeatedly notified, was for the protection of St. Paul against losses on the other bonds which it wrote for Stewart.

The Supreme Court regarded the assignment as conditional in this sense: ''The sole question that is controlling . . . is whether the purported assignment was absolute . . . , or was a conditional assignment which never became operative.'' (P. 698.) It also regarded the assignment as conditional in the sense that it was for security only. ''But if the assignment was a conditional one, *that is one for security of the assignee,* . . . the assignee can recover from the debtor of the assignor only if its security has been adversely affected, that is, only if it has suffered a loss.'' (P. 692; italics added.) St. Paul contends that even though it is precluded by the decision of the Supreme Court from arguing that the assignment was not one for security only, it is not precluded from arguing that the security was to cover all the bonds St. Paul wrote for Stewart. This, however, was a matter considered by the Supreme Court. ''St. Paul attempts to answer this reasoning with the claim that the assignment was not made solely to protect it from loss under the Stewart-Barnes contract, but for its protection from loss on account of any other bond which it wrote for Stewart during the same period. *That position is untenable for several reasons.* In the first place, it did not plead or offer proof on any such theory. It never advised Barnes that it had ever written any other bonds for Stewart. Moreover, such argument does not answer Barnes' principal contention that if it had been required to withhold and pay to St. Paul any sums to become due under Stewart's contract, it

would only be because Stewart was unable to perform, and St. Paul would have become obligated to expend the very money which it received in fulfilling the principal obligation under its contracts with the parties." (*St. Paul Fire & Marine Ins. Co.* v. *James I. Barnes Constr. Co., supra,* p. 700; italics added.)

Despite the language of the Supreme Court's opinion, appellant contends that the Supreme Court did not intend to foreclose appellant from arguing that the assignment was to cover losses on the other bonds. Appellant says that if the Supreme Court had so intended, it would have reversed the judgment with instructions to the trial court to enter judgment for $851.82, the losses on the Barnes bond, or to enter judgment for Barnes. However, the Supreme Court indicated by its directions on remand that this could not be done because of the unresolved questions as to whether the assignment ever became operative, whether St. Paul suffered any losses whatsoever, and whether Barnes was excused from paying to the assignor after notice. The Supreme Court did not indicate that there was any unresolved issue as to whether the assignment was to cover losses other than those from which St. Paul might have suffered under the Barnes bond.

Appellant has offered no new evidence which now makes its position any more tenable. True, it has now pleaded an assignment for security and alleged losses under its other bonds for Stewart jobs. It has also offered proof of the losses on other bonded jobs. It has not, however, shown that Barnes was advised that other bonds had been written for Stewart. It has also not answered the reasoning of the Supreme Court that if Barnes had been required to pay St. Paul, it would only be because Stewart had defaulted and St. Paul had become obligated to expend the money it received to fulfill the contract. Appellant says this is mere speculation upon events that never occurred. Rather than speculation, however, this reasoning is a description of an integrated transaction consisting of three parts: the subcontract, the bond and the assignment—and involving three parties: Barnes, Stewart and St. Paul. If St. Paul intended that the assignment protect it in its relations with Stewart on other jobs not within this transaction, such intention should have been communicated to Barnes as suggested in the Supreme Court opinion. Appellant in its opening brief says that Barnes was advised that other bonds had been written by the very language of the assign-

ment to the effect that in the event of default by Stewart in performing the Barnes-Stewart contract any monies assigned would be the sole property of St. Paul and would be credited upon any loss incurred under "the said bond or bonds and any other bond or bonds heretofore or hereafter executed at the request of the undersigned." But the words "other bonds" could refer to other bonds of Stewart (on this job) with Barnes as principal. Therefore, contrary to appellant's contention, the Supreme Court was not merely speculating about a hypothetical situation, nor was the court unaware of the facts. Since the appellant offered no further evidence that Barnes received notice of the other bonds or of St. Paul's intention to be protected by the assignment beyond the bond covering the Barnes job, it is concluded that the trial court was justified in its conclusion that the appellant was not entitled to recover for its losses under the other bonds.

Respondents raise the next contention, i.e., that the trial court erred in awarding judgment for St. Paul for its payment of the claim of Elias and Decker on the Barnes bond. Respondents argue that the payments by Barnes to Stewart were exercised because of the necessity of completing the contract.

Appellant contends that respondents are not in a position to attack the findings, conclusion or judgment of the trial court because they filed no appeal. However, by virtue of Code of Civil Procedure section 956, respondents are entitled to take this position. Although the party in whose favor judgment is rendered generally cannot, on appeal by the opposite party ask the reviewing court to consider errors to which he objected in the trial court, under this section he may, without appealing from the judgment, request the court to review such matters to determine whether the appellant was prejudiced by errors on which he relies for reversal or modification of judgment. (*Auer* v. *Frank,* 227 Cal.App.2d 396 [38 Cal. Rptr. 684, 8 A.L.R.3d 1108]; *Polk* v. *Polk,* 228 Cal.App.2d 763 [39 Cal.Rptr. 824].)

The debtor of the assignor would ordinarily be liable to the assignee if he made payments to the assignor after receiving notice of the assignment. However, when the existence of the assigned fund is dependent upon performance by the assignor of an executory contract, the anticipatory debtor may do whatever reasonably appears to be necessary to enable the assignor to perform the contract. (*Benton* v. *Hofmann*

*Plastering Co.,* 207 Cal.App.2d 61, 70 [24 Cal.Rptr. 268];
*Fricker* v. *Uddo & Taormina Co.,* 48 Cal.2d 696 [312 P.2d
1085]; *Peden Iron & Steel Co.* v. *McKnight,* 60 Tex.Civ.App.
45 [128 S.W. 156]; 4 Corbin on Contracts, §§ 875-877.)
■ The trial judge at the second trial found that all the
payments made by Barnes to Stewart were necessary for the
completion of the executory contract, yet he concluded that
the assignee was entitled to recover. There is thus an incon-
sistency between the findings of fact and conclusion of law.

The facts disclose that a sum in excess of $5,000 was paid
by respondents to Stewart *after the job had been completed.*
No testimony was offered in explanation of how this payment
could have been necessary to complete the job except the sug-
gestion that it was necessary in order for Stewart to fulfill all
of its obligations under the contract, which obligations
included payment by Stewart of any workers or materialmen.
Since this is the second trial of this case, it is unlikely that, if
remanded, the parties could produce additional evidence. It is
also noted that the award of judgment for St. Paul on the two
claims gives rise to the inference that the trial court intended
to find that the last payment was unnecessary. It is deter-
mined that it is to the interests of all parties that the matter
be resolved in this appeal. Therefore, the findings of the trial
court are modified pursuant to section 956a of the Code of
Civil Procedure, which allows the appellate court in a non-
jury case to make findings of fact contrary to those made or
in addition to those made by the trial court, and it is found
that the final payment to Stewart was unnecessary to com-
plete the contract.

St. Paul has established that it was required to pay the
claim of Elias and Decker (plus fees) in the amount of
$1,540.64 on the Stewart-Barnes bond. The trial court cor-
rectly awarded judgment in its favor against Barnes for that
sum.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied January 8, 1969, and
appellant's petition for a hearing by the Supreme Court was
denied February 5, 1969.