483 P.2d 674

Louis NOESKE, Plaintiff-Respondent,

v.

Harold L. HIEBERT, George L. Lords, Hiebert Contracting Co., and Lake-Log Lumber, Inc., Defendants-Appellants.

No. 10244.

Supreme Court of Idaho.

Dec. 21, 1970.

Rehearing Denied April 6, 1971.

**144**

Jerrold E. Park, McFadden & Park, St. Maries, for defendants-appellants.

Wilson & Walter, Coeur d'Alene, for plaintiff-respondent.

SPEAR, Justice.

Appellants' petition for rehearing is denied.

However, since there is merit to a portion of appellants' contentions, the opinion originally released on December 21, 1970 is withdrawn and the following substituted therefor.

This appeal arose out of a claim and delivery action filed by respondent Louis Noeske to recover a log pulling machine and fourteen barrel barges. The trial court confirmed his allegations of title under a conditional sale contract which was in default, and granted him $225.00 for damages against the defendants-appellants for their wrongful retention of the property.

The facts are best gleaned from the findings of fact entered by the trial court as follows:

**"I.**

"That on October 10, 1961 plaintiff and others secured a patent from the United States Patent Office on a device for locating and salvaging sunken logs, hereafter called a log picker, which device consisted of a hook and floats arranged in such a way that when dragged along the lake bed, logs lying thereon would be hooked by the hook arrangement, and through use of other machinery, raised to the surface for salvaging. That plaintiff subsequently acquired the interests of the other patentees to said patent.

**"II.**

"That on February 21, 1962 the plaintiff, Louis Noeske, entered into a conditional sales contract with Delbert J. Yearout and Lyle E. Amos who apparently were doing business under the name of A–Y Log Salvage. This contract carried a balance due of $2,900.00, plus interest at 6% from date, pertained to the purchase of two complete deadhead log pulling machines with other equipment, and was to be paid at the rate of $5.00 per thousand for logs delivered to the Russell Lumber Co., Springston, Idaho. It was also provided that after the machines were paid in full, 'Louis Noeske is to be paid $2.00 per thousand for the use of paten (sic) on hook.' Among other things the printed portion of the contract provided that plaintiff would retain title to the property [un]till all sums due are fully paid in cash and all terms, conditions and covenants of .the contract were performed. The contract also provided that the 'purchaser, directly or indirectly, shall not misuse, secrete, sell, encumber, dispose of said property nor remove the same,' etc. without

seller's consent 'nor assign nor encumber this contract without seller's consent.' That coincidentally with the signing of said contract a promissory note was executed by the parties, as purchasers, to Louis Noeske for the balance due under the contract, with interest at 6% per annum. Between the date of execution of the contract and October 5, 1962, the full sum of $2,900.00 was paid to plaintiff herein, but no sums had been paid as interest.

## "III.

"That on September 10, 1962, the same parties as purchasers under the February 21, 1962 conditional sales contract, entered into a second conditional sales contract as purchasers from plaintiff for fourteen barges, one Wisconsin engine, a 10 x 14 shop, a Mercury motor, boat and trailer for the full purchase price of $1,575.00.

"This second contract provided for payment at the rate of $5.00 per thousand, first payment starting May 1, 1963, with interest at 5% per annum from September 10, 1962, and was on an identical form as the first conditional sales contract and contained the same provisions in the printed portion of the contract, as to the retention of title and the duties of the purchaser.

## "IV.

"That in the early fall of 1963 the plaintiff herein, Lyle Amos, and the defendant, Harold L. Hiebert, began negotiations to permit said defendant to use the equipment previously sold to Lyle Amos, who by then had taken over the interest of Delbert Yearout. On September 13, 1963 the plaintiff sent copies of the conditional sales contracts, of February 21, 1962 and September 10, 1962, to the defendant Harold L. Hiebert and advised him that the first contract was paid in full, less the interest, which he 'figured last fall come to about $90.00,' and pointed out the fact that the purchasers were to pay $2.00 per thousand and also advised that the second contract had nothing paid on it. Letters transpired back and forth subsequent to this time between plaintiff and defendant, Harold L. Hiebert, but none of which culminated in any firm agreement.

## "V.

"That defendant Harold L. Hiebert made a payment of $200.00 to the plaintiff on March 20, 1964 with the accompanying advices, 'royalty on hook used by Lyle Amos, this payment can apply to credit of A–Y Salvage only and not considered binding in any way to Hiebert.' This payment was in the amount of $200.00.

## "VI.

"On May 1, 1964 plaintiff and Lyle Amos entered into a third conditional sales contract. This contract pertained to another deadhead log pulling machine under patent *and the patent itself*, to which was attached copies of conditional sales contract between same parties dated February 21, 1962 and referred to as Exhibit A, and conditional sales contract between the same parties dated September 10, 1962 and referred to as Exhibit B. Title was also retained to the equipment described in this May 1, 1964 conditional sales contract and there was a prohibition against the purchasers [sic] selling, assigning or transferring any rights under the contract or transferring his rights under the contract or transferring possession of said property. The contract also provided that the equipment covered by the attached contracts of February 21, 1962 and September 10, 1962, were still being purchased on the conditional sales contract and that the royalty of $2.00 per thousand would continue to be paid and applied, first, to the February 21, 1962 contract, (Exhibit A), secondly to the September 10, 1962 contract (Exhibit B), and, thirdly, to the May 1, 1964 contract as set forth in the following language:

"'It is further understood and agreed herein that the buyer herein shall continue to pay to the seller herein the sum of $2.00 per thousand as in Exhibit A provided, which sum shall be applied directly against the balance due on the pur-

chase price as set forth in Exhibit A and Exhibit B attached hereto. That upon such time as the total purchase price for the equipment set forth in Exhibit A and B, attached hereto, has been paid in full, and the payments provided for in Exhibit A in the amount of $2.00 per thousand as royalty for the hooks therein described shall be applied to the principal and interest balance due under this contract until this contract is paid in full. The payments referred to in the amount of $2.00 per thousand as royalty for the use of the hooks in Exhibit A, attached hereto, shall, as herein set forth, be first applied to the purchase price of the property set forth in Exhibit A and B as therein provided and thereafter applied to the balance under this contract, which said sum shall be paid in addition to the sums hereinafter set forth and provided for as payment for the hereinabove described equipment. At such time as the interest and principal balance under this contract is paid in full, there shall thereafter be no further payments due and owing to the seller herein from the buyer under either Exhibit A, Exhibit B or this contract for royalties or otherwise.'

"VII.

"That the intention of the parties to the May 1, 1964 conditional sales contract was that the royalty payment, as such, for the use of the hook, would be discontinued, and that the purchase price of the February 21, 1962 and September 10, 1962 conditional sales contracts were to be paid off, with interest, and thereafter the payments applied to the conditional sales contract of May 1, 1964, and when this was completed that the purchaser would then own the patent on the hooks.

"VIII.

"That subsequent to the execution of the conditional sales contract on May 4, 1964, another payment, evidenced by invoice stubs, was made from Hiebert to Noeske for 'royalty on hooks for logs salvaged by

A–Y Log Salvage,' and then describing certain logs as to amounts. At the bottom of the invoice stub was written 'royalty to date, $756.98, previous paid $200.00' and then the figure '$556.98', being the amount of the check previously attached.

"IX.

"That the May 1, 1964 contract, sometimes referred to as the third contract, was properly filed for record with the Kootenai County Recorder on June 15, 1964, which filing included the attached conditional sales contracts between the parties dated February 21, 1962 and September 10, 1962.

"X.

"That on December 22, 1964 Amos assigned to Hiebert the May 1, 1964 contract and the Court finds that at no time did the plaintiff Noeske ever consent to this assignment, either directly or constructively, nor did he ever recognize the assignment, and, that conversely, after the assignment, was attempting to make a deal directly with Hiebert. That the correspondence also indicates that Hiebert recognized the equipment as still belonging to Noeske.

"XI.

"The May 1, 1964 contract was for the sale of specific personal property and recognized the existence of the first and second contracts and provided for one payment to cover all three contracts; whereas, before such execution this was not the case, as each contract carried specific payment plus royalty, all based on a payment per thousand of logs salvaged. The Court finds, therefore, that payment by Hiebert to Noeske on March 20, 1964 would have applied as royalty and not as interest on the first contract as contended by defendant, but that the payment of May 4, 1964, after the execution of the third contract, would have applied to the interest under the first contract with the balance to apply to the principal under the second contract, as at this time the parties had, by the third contract, terminated any further royalty

payments as such. This payment paid all obligations of Amos under contract dated February 21, 1962, the first contract; however, on July 17, 1965, Amos signed a statement, acknowledging that he was in default under the first, second and third conditional sales contracts, and surrendering and returning personally all of said property, as therein described, with a couple of minor exceptions. This was followed by repossession by the plaintiff of property described in the February 21, 1962 and September 10, 1962 contracts and the complaint herein.

"XII.

"That Lyle Amos as conditional purchaser, did upon demand by plaintiff surrender to plaintiff Louis Noeske on July 17, 1965 all right in the property described in plaintiff's complaint and described in conditional sales contracts of February 21, 1962, September 10, 1962, and May 1, 1964 between Amos and Noeske.

"XIII.

"That defendant admitted by pleading that $75.00 per day was the reasonable value of use of the property; the demand for possession was made on the defendant on August 3, 1965; and possession was acquired by the Sheriff on August 6, 1965; therefore the plaintiff would be entitled to three (3) days value of use of property at $75.00 per day or the amount of $225.00 from the defendant."

Noeske filed a claim and delivery action on August 6, 1965, against all of the appellants—Harold Hiebert, Hiebert Contracting Co. and Lake-Log Lumber, Inc., two corporations which Hiebert had formed for the purpose of pulling logs from Lake Coeur d'Alene, and Darrel Lords, an employee of Hiebert and secretary of Lake-Log Lumber, Inc.—to recover the log pulling machine, motors, etc. (the property involved in the February 21, 1962 contract) and fourteen barrel barges, a portion of the property sold in the September 10, 1962 contract. The Kootenai County Sheriff

repossessed the property on the same day. The appellants then filed an answer and a counterclaim, and a third-party complaint against Lyle Amos, Laurie Amos, his wife, and A-Y Log Salvage. The third-party defendants moved for summary judgment, which motion was granted when it was not opposed upon hearing.

The district court entered judgment denying appellants' counterclaim, confirming Noeske's right to possession of the property, and granting judgment against appellants in the amount of $225.00 for wrongful retention of the property. The damages were based on the court's findings that demand for possession of the property was made to the appellants on August 3, 1965, that possession was acquired by the sheriff on August 6, 1965, and the parties' agreement that $75.00 per day was the reasonable value of the use of the property. From that judgment, this appeal was perfected.

Appellants first contend that the trial court erred in holding that they acquired no rights to the property in dispute under the assignment of December 22, 1964, and that such assignment was void. They argue that the "third contract" dated May 1, 1964, incorporated the "first contract" dated February 21, 1962 and also the "second contract" dated September 10, 1962; that the assignment of the third contract from Amos to Hiebert thus assigned the first and second contracts which covered the log-puller and barges; and that since Hiebert was a valid assignee with an interest in the contracts and the property, Amos' admission of default was not sufficient to prove that Hiebert was in default nor to deprive Hiebert of his interest, especially as to the first contract which the trial court found was completely paid.

The third contract did not incorporate the earlier two contracts. As the trial court correctly found, the third contract merely recognized the existence of the first two contracts, attached them as Exhibits A and B, repealed the royalty provi-

sion in the first contract which required the payment of $2.00 per thousand feet of lumber salvaged as royalty for the use of the patented hooks, and provided that the $2.00 per thousand payment would thereafter apply as a payment against the balance due on the first, second and third contracts. Thus, even if the assignment had been valid, since only the rights of Amos under the third contract were assigned to Hiebert and those rights did not pertain to the property which is the subject of this action, Hiebert could acquire no interest in such property by virtue of the assignment.

Appellants next claim an interest to the property under the chattel mortgage given by Amos to Hiebert, and contend that the trial court erred in failing to hold that such security interest was sufficient to prevent Amos from depriving Hiebert of his interest by acknowledging a default under the contracts when no default existed. Appellants overlook the fact, however, that Hiebert released the promissory note and chattel mortgage against the log-puller and barges as consideration for Amos' assignment of his rights under the third contract. Thus, prior to the time Noeske repossessed the property, Hiebert's interest in the same under the chattel mortgage was extinguished.

Although the assignment constituted the consideration for Hiebert's relinquishment of his rights under the chattel mortgage, and the assignment was held by the trial court to be void, it cannot successfully be argued that a failure of consideration on the part of Amos occurred which resulted in the revival of the chattel mortgage. The third contract provided that Amos could not assign his rights under the contract without the consent of Noeske, and since no consent was given by Noeske, the assignment was void as between Noeske and Hiebert, the latter obtaining no rights to or under the third contract. Parkinson v. Caldwell, 126 Cal.App.2d 548, 272 P.2d 934 (1954); Masterson v. Sine, 68 Cal.2d 222, 65 Cal.Rptr. 545, 436 P.2d 561 (1968); Security National Bank v. General Motors Corp., 345 Mass. 434, 187 N.E.2d 820 (1963); Merchants & Farmers Bank of Meridian v. McClendon, 220 So.2d 815 (Miss.1969). The prohibition of an assignment was for the benefit of the vendor, Noeske, however, and it in no way affected the validity of the assignment as between Amos and Hiebert, subject, of course, to Noeske's interest in enforcing the prohibition. Burck v. Taylor, 152 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578 (1894); Rosenthal v. Landau, 90 Cal.App.2d 310, 202 P.2d 810 (1949); McLaughlin v. New England Telephone & Tel. Co., 345 Mass. 555, 188 N.E.2d 552 (1963); Dole Company v. Aetna Casualty and Surety Company, 269 F.Supp. 72 (D.Me.1967); Williston, Contracts (3rd ed.), § 422, p. 140; Corbin-on-Contracts (1951), § 873, p. 497.

In their final assignment of error, appellants contend that there is no evidence that the appellants, or any one of them, denied or deprived Noeske of possession of the property, and that the awarding of damages to Noeske on that ground constituted error. The trial court found that the appellants admitted in their pleadings that demand for the property had been made to the appellants by Noeske and that the demand had been denied. A careful examination of the record reveals that the trial court was in error, for no such admission is contained in the answer filed by the appellants. Additionally, there was no evidence adduced during the trial which would have supported any such finding by the trial court. Therefore, this portion of the judgment must be reversed.

Judgment of the district court is affirmed with the exception of the award to respondent of $225 damages for wrongful detention of property, that portion thereof being reversed. Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.